## SHAFFER *v.* CARTER, STATE AUDITOR, ET AL.

APPEALS FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF OKLAHOMA.

Nos. 531, 580. Argued December 11, 12, 1919.—Decided March 1, 1920.

When, upon application for a preliminary injunction, the District Court not only refuses the injunction but dismisses the bill, appeal to this court should be under Jud. Code, § 238, from the final decree, and not under § 266. P. 44.

Equity may be resorted to for relief against an unconstitutional tax lien, clouding the title to real property, if there be no complete remedy at law. P. 46.

*Quære:* Whether the Oklahoma laws afford an adequate legal remedy in a case where the constitutionality of the state income tax law is in question. *Id.*

The Oklahoma taxing laws afford no legal remedy for removing a cloud caused by an invalid lien for an income tax. P. 48.

Having acquired jurisdiction, equity affords complete relief. *Id.*

Governmental jurisdiction in matters of taxation depends upon the power to enforce the mandate of the State by action taken within its borders either *in personam* or *in rem.* P. 49.

A State may tax income derived from local property and business owned and managed from without by a citizen and resident of another State (pp. 49–55): such power is consistent with Const., Art. IV, § 2, guaranteeing privileges and immunities and the equal protection clause of the Fourteenth Amendment. Pp. 53–56.

The constitutionality of such a tax depends on its practical operation and effect, and not on mere definitions or theoretical distinctions respecting its nature and quality. P. 54.

The fact that the Oklahoma income tax law permits residents to deduct from their gross income losses sustained without as well as those sustained within the State, while non-residents may deduct only those occurring within it, does not make the law obnoxious to the privileges and immunities clause, *supra*, or the equal protection clause of the Fourteenth Amendment. P. 56.

Net income derived from interstate commerce is taxable under a state law providing for a general income tax. P. 57.

The Oklahoma gross production tax, imposed on oil and gas producing companies, was intended as a substitute for the *ad valorem* property tax, and payment of it does not relieve the producer from taxation under the state income tax law. *Id.*

The Constitution, including the Fourteenth Amendment, does not forbid double taxation by the States. P. 58.

Without deciding whether it would be consistent with due process to enforce a tax on the income derived by a non-resident from part of his property within a State by imposing a lien on all his property, real and personal, there situate, *held*, that in this case the State was justified in treating the various properties and business of a producer of oil and natural gas, who went on with their operation after the income tax law was enacted, as an entity, producing the income and subject to the lien. *Id.*

No. 531, appeal dismissed.

No. 580, decree affirmed.

THE case is stated in the opinion.

*Mr. Malcolm E. Rosser,* with whom *Mr. George S. Ramsey, Mr. Edgar A. de Meules, Mr. Villard Martin* and *Mr. J. Berry King* were on the brief, for appellant:

The tax is directed against the income as such, entirely separate from the business or property out of which it

arises. Therefore it is not an excise tax within the meaning of the Oklahoma constitution; but, even if it were, it cannot be lawfully laid unless the situs of the income is in Oklahoma.

This tax is not laid on any theory of protection but on ability to pay. *Income Tax Cases*, 148 Wisconsin, 456. Its very nature shows that it is directed against wealthy people. A thousand whose combined income equals appellant's would have no income tax to pay, though their income was from the same sort of business. Appellant's income is taxed only because it is large and is all going to one man. Appellant is not in Oklahoma; therefore the State does not protect him. It protects his property and business, but no more than if they were owned by a thousand instead of one. It gives his income, as such, no protection at all, but on the other hand seeks to diminish it merely because it is large. Appellant's income is from a number of leases. If the income from each lease went to a different man there would be no tax. What difference can it make to Oklahoma whether it all goes to one man or not, if the recipient does not live in Oklahoma? *Maguire v. Tax Commissioner*, 230 Massachusetts, 503; *Brady v. Anderson*, 240 Fed. Rep. 665.

The provisions of the law show that the tax is intended as a tax on persons rather than property. So the similar law of Wisconsin has been construed. *Manitowoc Gas Co. v. Wisconsin Tax Commission*, 161 Wisconsin, 111; *State ex rel. Sallie F. Moon Co. v. Wisconsin Tax Commission*, 166 Wisconsin, 287; *U. S. Glue Co. v. Oak Creek*, 161 Wisconsin, 211; *s. c.* 247 U. S. 321; *Peck & Co. v. Lowe*, 247 U. S. 165. And see *Brady v. Anderson, supra*.

Under the facts of this case appellant's income is never in Oklahoma. Its situs is in Illinois. It appears that the appellant manages his business from his office in Chicago; devotes his time, energy and judgment to

it; makes his purchases of supplies and materials, with minor exceptions, from that office, buying outside of Oklahoma and having his purchases shipped in; the contracts for the sale of oil are made by him in Chicago with non-residents of Oklahoma, and these non-residents pay him by checks drawn at their offices, outside of Oklahoma, on banks outside of that State and send the checks to him in Chicago. The actual money constituting his income is never in Oklahoma. The net income, which is all the State is attempting to tax, is never there. He does not call on the State to assist him in collecting his income, and if any of the non-residents to whom he sells oil should breach their contracts he would not call on the courts of Oklahoma for redress. Unless the income tax is a tax on the source of the income, and not on the income itself, considered as a separate entity, the subject of taxation in this case is in Chicago.

An income is not a chose in action—a mere promise or expectation. It is something already derived or received, in the hands of the owner at the time it is derived. It springs into existence when received; or if there is a difference, the money from which the income is made up is with the owner before it has taken the form of net income. The owner gets the gross proceeds, pays some expenses, and the remainder constitutes the taxable income under the Oklahoma law. There is no taxable income until the owner has received the money and paid expenses out of it.

The property or business out of which an income arises is in no way representative of the income. The value of the property, or the volume of the business, has no necessary relation to the amount of net income. A man may have property and business and lose money on both.

The income is not a chose in action but in possession and in this case, in fact as well as in law, is at the resi-

dence of the owner.  The usual rule that movables follow and have their situs at the residence of the owner is in some cases a mere fiction adopted for the purpose of convenience and can be changed by the legislature when it has any jurisdiction at all.  But there is a limit to this power.  Situs is determined by the facts.  See *Adams* v. *Colonial &c. Mortgage Co.*, 82 Mississippi, 263.

It is not possible to escape the conclusion that the law is attempting to tax appellant simply because he made money in Oklahoma.  The State has no jurisdiction over either his person or his income and it cannot tax his business for the reason that it is not taxing any similar business of residents, except by the gross production tax, and appellant has paid that.

Oklahoma cannot tax property not in the State.  To do so would be to take property without due process of law.  Inheritance taxes rest on entirely different bases. *Blackstone* v. *Miller*, 188 U. S. 189; *United States* v. *Perkins*, 163 U. S. 625; *Union National Bank* v. *Chicago*, 3 Biss. 82.

The jurisdiction of the State over incomes of non-residents is not like that of the Federal Government over incomes of aliens.

Oklahoma cannot tax the business, skill, ability and energy of appellant.  *Stratton's Independence* v. *Howbert*, 231 U. S. 399.  There is a difference between corporations and individuals in this regard.  *Adams Express Co.* v. *Ohio*, 166 U. S. 185:

The provisions of the statute attempting to create a lien on all of appellant's property in Oklahoma to secure payment of the income tax are void.  *Dewey* v. *Des Moines*, 173 U. S. 193; *City of New York* v. *McLean*, 170 N. Y. 374.

If the tax is held to be an excise, the payment by appellant of the gross production tax required by c. 39, Laws of 1916, relieves him from liability.  That chapter

repeals the income tax law so far as the income is derived from the production of oil and gas.

If the tax is an excise, it is void because it deprives appellant of privileges and immunities enjoyed by citizens of Oklahoma, and because it denies him the equal protection of the laws and takes his property without due process of law. *County of Santa Clara* v. *Southern Pacific R. R. Co.*, 18 Fed. Rep. 385; *Slaughter-House Cases*, 16 Wall. 36; *Ward* v. *Maryland*, 12 Wall. 418; *Chalker* v. *Birmingham & Northwestern Ry. Co.*, 249 U. S. 522; *Wiley* v. *Parmer*, 14 Alabama, 627; *Sprague* v. *Fletcher*, 69 Vermont, 69.

The income tax law of Oklahoma permits residents to deduct from their gross income, not only losses within the State, but also losses from business or in any other way, sustained outside of Oklahoma. It does not permit non-residents to deduct their losses from their business outside of the State, from their profits on business carried on inside of the State. It seems to us that this question is controlled by the *Slaughter-House Cases, supra; Ward* v. *Maryland, supra;* and *Southern Ry. Co.* v. *Greene,* 216 U. S. 400. If the resident can deduct losses outside of the State while the non-resident is not permitted to do so, there is discrimination. Here there is no subject-matter to uphold the tax as a privilege unless the court shall hold that there are two distinct privileges in every business, one to run the business and another to make money out of it. An excise tax on the business of a natural person, the business being lawful, not the subject of license nor exercised through a franchise, cannot be graduated in proportion to the net profits. *Flint* v. *Stone Tracy Co.*, 220 U. S. 107, and *Magoun* v. *Illinois Trust & Savings Bank,* 170 U. S. 283, distinguished.

A great part of the net profit is earned outside of the State. There is no way to divide the profits between Oklahoma and Chicago, and Oklahoma has not at-

tempted to formulate a plan. Under any view this tax must fall. *Western Union Telegraph Co.* v. *Kansas,* 216 U. S. 1, 30.

If the tax is a privilege or excise tax it is void because it lays a burden on interstate commerce. *Crew Levick Co.* v. *Pennsylvania,* 245 U. S. 292; *Postal Telegraph Cable Co.* v. *Adams,* 155 U. S. 688, 695; *Minnesota Rate Cases,* 230 U. S. 352; *Kansas City &c. Ry. Co.* v. *Kansas,* 240 U. S. 227; *Western Union Telegraph Co.* v. *Kansas,* 216 U. S. 1. If the tax is considered an excise on business, rather than an income tax proper, it is not governed by *U. S. Glue Co.* v. *Oak Creek, supra;* nor by *Peck & Co.* v. *Lowe, supra.*

*Mr. S. P. Freeling,* Attorney General of the State of Oklahoma, and *Mr. C. W. King,* Assistant Attorney General of the State of Oklahoma, with whom *Mr. W. R. Bleakmore,* Assistant Attorney General of the State of Oklahoma, was on the brief. for appellees.

MR. JUSTICE PITNEY delivered the opinion of the court.

These are two appeals, taken under circumstances that will be explained, from a single decree in a suit in equity brought by appellant to restrain the enforcement of a tax assessed against him for the year 1916 under the Income Tax Law of the State of Oklahoma, on the ground of the unconstitutionality of the statute.

A previous suit having the same object was brought by him in the same court against the officials then in office, in which an application for an interlocutory injunction heard before three judges pursuant to § 266, Judicial Code, was denied, one judge dissenting. *Shaffer* v. *Howard,* 250 Fed. Rep. 873. An appeal was taken to this court, but, pending its determination, the terms of office of the defendants expired, and, there being no law of the

State authorizing a revival or continuance of the action against their successors, we reversed the decree and remanded the cause with directions to dismiss the bill for want of proper parties. 249 U. S. 200.

After such dismissal, the present defendant Carter, as State Auditor, issued another tax warrant and delivered it to defendant Bruce, Sheriff of Creek County, with instructions to levy upon and sell plaintiff's property in that county in order to collect the tax in question; and the sheriff having threatened to proceed, this suit was commenced. An application for an interlocutory injunction, heard before three judges, was denied upon the authority of the decision in 250 Fed. Rep. and of certain recent decisions of this court. The decree as entered not only disposed of the application but dismissed the action. Plaintiff, apparently unaware of this, appealed to this court under § 266, Judicial Code, from the refusal of the temporary injunction. Shortly afterwards he took an appeal under § 238, Judicial Code, from the same decree as a final decree dismissing the action. The latter appeal is in accord with correct practice, since the denial of the interlocutory application was merged in the final decree. The first appeal (No. 531) will be dismissed.

The constitution of Oklahoma, besides providing for the annual taxation of all property in the State upon an *ad valorem* basis, authorizes (Art. 10, § 12) the employment of a variety of other means for raising revenue, among them income taxes.

The act in question is c. 164 of the Laws of 1915. Its first section reads as follows: "Each and every person in this State, shall be liable to an annual tax upon the entire net income of such person arising or accruing from all sources during the preceding calendar year, and a like tax shall be levied, assessed, collected and paid annually upon the entire net income from all property owned, and of every business, trade or profession carried on in this

State by persons residing elsewhere." Subsequent sections define what the term "income" shall include; prescribe how net income shall be computed; provide for certain deductions; prescribe varying rates of tax for all taxable incomes in excess of $3,000, this amount being deducted (by way of exemption) from the income of each individual, and for one living with spouse an additional $1,000, with further deductions where there are children or dependents, exemptions being the same for residents and non-residents; require (§ 2) a return on or before March first from each person liable for an income tax under the provisions of the act for the preceding calendar year; provide (§ 9) that the State Auditor shall revise returns and hear and determine complaints, with power to correct and adjust the assessment of income; that (§ 10) taxes shall become delinquent if not paid on or before the first day of July, and the State Auditor shall have power to issue to any sheriff of the State a warrant commanding him to levy the amount upon the personal property of the delinquent party; and (by § 11) "If any of the taxes herein levied become delinquent, they shall become a lien on all the property, personal and real, of such delinquent person, and shall be subject to the same penalties and provisions as are all *ad valorem* taxes."

Plaintiff, a non-resident of Oklahoma, being a citizen of Illinois and a resident of Chicago in that State, was at the time of the commencement of the suit and for several years theretofore (including the years 1915 and 1916) engaged in the oil business in Oklahoma, having purchased, owned, developed, and operated a number of oil and gas mining leases, and being the owner in fee of certain oil-producing land, in that State. From properties thus owned and operated during the year 1916 he received a net income exceeding $1,500,000, and of this he made, under protest, a return which showed that,

at the rates fixed by the act, there was due to the State an income tax in excess of $76,000. The then State Auditor overruled the protest and assessed a tax in accordance with the return; the present Auditor has put it in due course of collection; and plaintiff resists its enforcement upon the ground that the act, in so far as it subjects the incomes of non-residents to the payment of such a tax, takes their property without due process of law and denies to them the equal protection of the laws, in contravention of § 1 of the Fourteenth Amendment; burdens interstate commerce, in contravention of the commerce clause of § 8 of Art. I of the Constitution; and discriminates against non-residents in favor of residents, and thus deprives plaintiff and other non-residents of the privileges and immunities of citizens and residents of the State of Oklahoma, in violation of § 2 of Art. IV. He also insists that the lien attempted to be imposed upon his property pursuant to § 11 for taxes assessed upon income not arising out of the same property would deprive him of property without due process of law.

As ground for resorting to equity, the bill alleges that plaintiff is the owner of various oil and gas mining leases covering lands in Creek County, Oklahoma, and that the lien asserted thereon by virtue of the levy and tax warrant creates a cloud upon his title. This entitles him to bring suit in equity (*Union Pacific Ry. Co.* v. *Cheyenne,* 113 U. S. 516, 525; *Pacific Express Co.* v. *Seibert,* 142 U. S. 339, 348; *Ogden City* v. *Armstrong,* 168 U. S. 224, 237; *Ohio Tax Cases,* 232 U. S. 576, 587; *Greene* v. *Louisville & Interurban R. R. Co.,* 244 U. S. 499, 506), unless the contention that he has a plain, adequate, and complete remedy at law be well founded.

This contention is based, first, upon the provision of § 9 of c. 164, giving to the State Auditor the same power to correct and adjust an assessment of income that is given to the county board of equalization in cases of *ad*

*valorem* assessments, taken in connection with c. 107 of the Laws of 1915, which provides (Art. 1, Subdiv. B, § 2, p. 147) for an appeal from that board to the district court of the county. In a recent decision (*Berryhill* v. *Carter*, 76 Oklahoma, 248), the Supreme Court of the State held that an aggrieved income taxpayer may have an appeal under this section, and that thus "all matters complained of may be reviewed and adjusted to the extent that justice may demand." But the case related to "correcting and adjusting an income tax return," and the decision merely established the appeal to the district court as the appropriate remedy, rather than an application to the Supreme Court for a writ of certiorari. It falls short of indicating—to say nothing of plainly showing—that this procedure would afford an adequate remedy to a party contending that the income tax law itself was repugnant to the Constitution of the United States.

Secondly, reference is made to § 7 of Subdiv. B, Art. 1, of c. 107, Oklahoma Laws 1915, p. 149, wherein it is provided that where illegality of a tax is alleged to arise by reason of some action from which the laws provide no appeal, the aggrieved person on paying the tax may give notice to the officer collecting it, stating the grounds of complaint and that suit will be brought against him; whereupon it is made the duty of such officer to hold the tax until the final determination of such suit if brought within thirty days; and if it be determined that the tax was illegally collected, the officer is to repay the amount found to be in excess of the legal and correct amount. But this section is one of several that have particular reference to the procedure for collecting *ad valorem* taxes; and they are prefaced by this statement (p. 147): "Subdivision B. To the existing provisions of law relating to the *ad valorem* or direct system of taxation the following provisions are added:" Upon this ground, in *Gipsy*

*Oil Co.* v. *Howard* and companion suits brought by certain oil-producing companies to restrain enforcement of taxes authorized by the gross production tax law.(Sess. Laws 1916, c. 39, p. 102), upon the ground that they were an unlawful imposition upon federal instrumentalities, the United States District Court for the Western District of Oklahoma held that the legal remedy provided in § 7 of c. 107 applied only to *ad valorem* taxes, and did not constitute a bar to equitable relief against the production taxes. Defendants appealed to this court, and assigned this ruling for error, *inter alia;* but they did not press the point, and the decrees were affirmed upon the merits of the federal question. *Howard* v. *Gipsy Oil Co.,* 247 U. S. 503.

We deem it unnecessary to pursue further the question whether either of the statutory provisions referred to furnishes an adequate legal remedy against income taxes assessed under an unconstitutional law, since one of the grounds of complaint in the present case is that, even if the tax itself be valid, the procedure prescribed by § 11 of the Income Tax Law for enforcing such a tax by imposing a lien upon the taxpayer's entire property, as threatened to be put into effect against plaintiff's property for taxes not assessed against the property itself and not confined to the income that proceeded from the same property, is not "due process of law," within the requirement of the Fourteenth Amendment. For removal of a cloud upon title caused by an invalid lien imposed for a tax valid in itself, there appears to be no legal remedy. Hence, on this ground at least, resort was properly had to equity for relief; and since a court of equity does not "do justice by halves," and will prevent, if possible, a multiplicity of suits, the jurisdiction extends to the disposition of all questions raised by the bill. *Camp* v. *Boyd,* 229 U. S. 530, 551–552; *McGowan* v. *Parish,* 237 U. S. 285, 296.

This brings us to the merits.

Under the "due process of law" provision appellant makes two contentions: first, that the State is without jurisdiction to levy a tax upon the income of non-residents; and, secondly, that the lien is invalid because imposed upon all his property real and personal, without regard to its relation to the production of his income.

These are separate questions, and will be so treated. The tax might be valid, although the measures adopted for enforcing it were not. Governmental jurisdiction in matters of taxation, as in the exercise of the judicial function, depends upon the power to enforce the mandate of the State by action taken within its borders, either *in personam* or *in rem* according to the circumstances of the case, as by arrest of the person, seizure of goods or lands, garnishment of credits, sequestration of rents and profits, forfeiture of franchise, or the like; and the jurisdiction to act remains even though all permissible measures be not resorted to. *Michigan Trust Co.* v. *Ferry,* 228 U. S. 346, 353; *Ex parte Indiana Transportation Co.,* 244 U. S. 456, 457.

It will be convenient to postpone the question of the lien until all questions as to the validity of the tax have been disposed of.

The contention that a State is without jurisdiction to impose a tax upon the income of non-residents, while raised in the present case, was more emphasized in *Travis* v. *Yale & Towne Mfg. Co.,* decided this day, *post,* 60, involving the income tax law of the State of New York. There it was contended, in substance, that while a State may tax the property of a non-resident situate within its borders, or may tax the incomes of its own citizens and residents because of the privileges they enjoy under its constitution and laws and the protection they receive from the State, yet a non-resident, although conducting a business or carrying on an occupation there, cannot

be required through income taxation to contribute to the governmental expenses of the State whence his income is derived; that an income tax, as against non-residents, is not only not a property tax but is not an excise or privilege tax, since no privilege is granted; the right of the non-citizen to carry on his business or occupation in the taxing State being derived, it is said, from the provisions of the Federal Constitution.

This radical contention is easily answered by reference to fundamental principles. In our system of government the States have general dominion, and, saving as restricted by particular provisions of the Federal Constitution, complete dominion over all persons, property, and business transactions within their borders; they assume and perform the duty of preserving and protecting all such persons, property, and business, and, in consequence, have the power normally pertaining to governments to resort to all reasonable forms of taxation in order to defray the governmental expenses. Certainly they are not restricted to property taxation, nor to any particular form of excises. In well-ordered society, property has value chiefly for what it is capable of producing, and the activities of mankind are devoted largely to making recurrent gains from the use and development of property, from tillage, mining, manufacture, from the employment of human skill and labor, or from a combination of some of these; gains capable of being devoted to their own support, and the surplus accumulated as an increase of capital. That the State, from whose laws property and business and industry derive the protection and security without which production and gainful occupation would be impossible, is debarred from exacting a share of those gains in the form of income taxes for the support of the government, is a proposition so wholly inconsistent with fundamental principles as to be refuted by its mere statement. That it may tax the land but not the crop, the tree but not the

fruit, the mine or well but not the product, the business but not the profit derived from it, is wholly inadmissible.

Income taxes are a recognized method of distributing the burdens of government, favored because requiring contributions from those who realize current pecuniary benefits under the protection of the government, and because the tax may be readily proportioned to their ability to pay. Taxes of this character were imposed by several of the States at or shortly after the adoption of the Federal Constitution. New York Laws 1778, c. 17; Report of Oliver Wolcott, Jr., Secretary of the Treasury, to 4th Cong., 2d sess. (1796), concerning Direct Taxes; American State Papers, 1 Finance, 423, 427, 429, 437, 439.

The rights of the several States to exercise the widest liberty with respect to the imposition of internal taxes always has been recognized in the decisions of this court. In *McCulloch* v. *Maryland*, 4 Wheat. 316, while denying their power to impose a tax upon any of the operations of the Federal Government, Mr. Chief Justice Marshall, speaking for the court, conceded (pp. 428–429) that the States have full power to tax their own people and their own property, and also that the power is not confined to the people and property of a State, but may be exercised upon every object brought within its jurisdiction; saying: "It is obvious, that it is an incident of sovereignty, and is co-extensive with that to which it is an incident. All subjects over which the sovereign power of a State extends, are objects of taxation," etc. In *Michigan Central R. R. Co.* v. *Powers*, 201 U. S. 245, the court, by Mr. Justice Brewer, said (pp. 292, 293): "We have had frequent occasion to consider questions of state taxation in the light of the Federal Constitution, and the scope and limits of National interference are well settled. There is no general supervision on the part of the Nation over state taxation, and in respect to the latter the State has, speaking generally, the freedom of a sovereign both as to ob-

jects and methods." That a State may tax callings and occupations as well as persons and property has long been recognized. "The power of taxation, however vast in its character and searching in its extent, is necessarily limited to subjects within the jurisdiction of the State. These subjects are persons, property, and business. . . . It [taxation] may touch business in the almost infinite forms in which it is conducted, in professions, in commerce, in manufactures, and in transportation. Unless restrained by provisions of the Federal Constitution, the power of the State as to the mode, form, and extent of taxation is unlimited, where the subjects to which it applies are within her jurisdiction." *State Tax on Foreign-Held Bonds*, 15 Wall. 300, 319. See also *Welton* v. *Missouri*, 91 U. S. 275, 278; *Armour & Co.* v. *Virginia*, 246 U. S. 1, 6; *American Mfg. Co.* v. *St. Louis*, 250 U. S. 459, 463.

And we deem it clear, upon principle as well as authority, that just as a State may impose general income taxes upon its own citizens and residents whose persons are subject to its control, it may, as a necessary consequence, levy a duty of like character, and not more onerous in its effect, upon incomes accruing to non-residents from their property or business within the State, or their occupations carried on therein; enforcing payment, so far as it can, by the exercise of a just control over persons and property within its borders. This is consonant with numerous decisions of this court sustaining state taxation of credits due to non-residents, *New Orleans* v. *Stempel*, 175 U. S. 309, 320, *et seq.; Bristol* v. *Washington County*, 177 U. S. 133, 145; *Liverpool &c. Ins. Co.* v. *Orleans Assessors*, 221 U. S. 346, 354; and sustaining federal taxation of the income of an alien non-resident derived from securities held in this country, *De Ganay* v. *Lederer*, 250 U. S. 376.

That a State, consistently with the Federal Constitution, may not prohibit the citizens of other States from carrying on legitimate business within its borders like its own

citizens, of course is granted; but it does not follow that
the business of non-residents may not be required to make
a ratable contribution in taxes for the support of the gov-
ernment. On the contrary, the very fact that a citizen of
one State has the right to hold property or carry on an oc-
cupation or business in another is a very reasonable
ground for subjecting such non-resident, although not
personally yet to the extent of his property held, or his
occupation or business carried on therein, to a duty to pay
taxes not more onerous in effect than those imposed under
like circumstances upon citizens of the latter State. Sec-
tion 2 of Art. IV of the Constitution entitles him to the
privileges and immunities of a citizen, but no more; not
to an entire immunity from taxation, nor to any preferen-
tial treatment as compared with resident citizens. It
protects him against discriminatory taxation, but gives
him no right to be favored by discrimination or exemption.
See *Ward* v. *Maryland,* 12 Wall. 418, 430.

Oklahoma has assumed no power to tax non-residents
with respect to income derived from property or business
beyond the borders of the State. The first section of the
act, while imposing a tax upon inhabitants with respect
to their entire net income arising from all sources, confines
the tax upon non-residents to their net income from prop-
erty owned and business, etc., carried on within the State.
A similar distinction has been observed in our federal in-
come tax laws, from one of the earliest down to the pres-
ent.[1] The Acts of 1861 (12 Stat. 309) and 1864 (13 Stat.

---

[1] Acts of August 5, 1861, c. 45, § 49, 12 Stat. 292, 309; June 30, 1864,
c. 173, § 116, 13 Stat. 223, 281; July 4, 1864, Joint Res. 77, 13 Stat. 417;
July 13, 1866, c. 184, § 9, 14 Stat. 98, 137–138; March 2, 1867, c. 169,
§ 13, 14 Stat. 471, 477–478; July 14, 1870, c. 255, § 6, 16 Stat. 256, 257;
August 27, 1894, c. 349, § 27, 28 Stat. 509, 553; October 3, 1913, c. 16,
§ II, A. Subd. 1, 38 Stat. 114, 166; September 8, 1916, c. 463, Title I,
Part I, § 1, a, 39 Stat. 756; October 3, 1917, c. 63, Title I, §§ 1 and 2, 40
Stat. 300; February 24, 1919, c. 18, §§ 210, 213 (c), 40 Stat. 1057, 1062,
1066.

281, 417) confined the tax to persons residing in the United States and citizens residing abroad. But in 1866 (14 Stat. 137–138) there was inserted by amendment the following: "And a like tax shall be levied, collected, and paid annually upon the gains, profits, and income of every business, trade, or profession carried on in the United States by persons residing without the United States, not citizens thereof." Similar provisions were embodied in the Acts of 1870 and 1894; and in the Act of 1913 (38 Stat. 166), after a clause imposing a tax upon the entire net income arising or accruing from all sources (with exceptions not material here) to every citizen of the United States, whether residing at home or abroad, and to every person residing in the United States though not a citizen thereof, the following appears: "and a like tax shall be assessed, levied, collected, and paid annually upon the entire net income from all property owned and of every business, trade, or profession carried on in the United States by persons residing elsewhere." Evidently this furnished the model for § 1 of the Oklahoma statute.

No doubt is suggested (the former requirement of apportionment having been removed by constitutional amendment) as to the power of Congress thus to impose taxes upon incomes produced within the borders of the United States or arising from sources located therein, even though the income accrues to a non-resident alien. And, so far as the question of jurisdiction is concerned, the due process clause of the Fourteenth Amendment imposes no greater restriction in this regard upon the several States than the corresponding clause of the Fifth Amendment imposes upon the United States.

It is insisted, however, both by appellant in this case and by the opponents of the New York law in *Travis* v. *Yale & Towne Mfg. Co.*, that an income tax is in its nature a personal tax, or a "subjective tax imposing personal liability upon the recipient of the income;" and that as to a

non-resident the State has no jurisdiction to impose such a liability. This argument, upon analysis, resolves itself into a mere question of definitions, and has no legitimate bearing upon any question raised under the Federal Constitution. For, where the question is whether a state taxing law contravenes rights secured by that instrument, the decision must depend not upon any mere question of form, construction, or definition, but upon the practical operation and effect of the tax imposed. *St. Louis Southwestern Ry. Co.* v. *Arkansas*, 235 U. S. 350, 362; *Mountain Timber Co.* v. *Washington*, 243 U. S. 219, 237; *Crew Levick Co.* v. *Pennsylvania*, 245 U. S. 292, 294; *American Mfg. Co.* v. *St. Louis*, 250 U. S. 459, 463. The practical burden of a tax imposed upon the net income derived by a non-resident from a business carried on within the State certainly is no greater than that of a tax upon the conduct of the business, and this the State has the lawful power to impose, as we have seen.

The fact that it required the personal skill and management of appellant to bring his income from producing property in Oklahoma to fruition, and that his management was exerted from his place of business in another State, did not deprive Oklahoma of jurisdiction to tax the income which arose within its own borders. The personal element cannot, by any fiction, oust the jurisdiction of the State within which the income actually arises and whose authority over it operates *in rem*. At most, there might be a question whether the value of the service of management rendered from without the State ought not to be allowed as an expense incurred in producing the income; but no such question is raised in the present case, hence we express no opinion upon it.

The contention that the act deprives appellant and others similarly circumstanced of the privileges and immunities enjoyed by residents and citizens of the State of Oklahoma, in violation of § 2 of Art. IV of the Constitu-

tion, is based upon two grounds, which are relied upon as showing also a violation of the "equal protection" clause of the Fourteenth Amendment.

One of the rights intended to be secured by the former provision is that a citizen of one State may remove to and carry on business in another without being subjected in property or person to taxes more onerous than the citizens of the latter State are subjected to. *Paul* v. *Virginia*, 8 Wall. 168, 180; *Ward* v. *Maryland*, 12 Wall. 418, 430; *Maxwell* v. *Bugbee*, 250 U. S. 525, 537. The judge who dissented in *Shaffer* v. *Howard*, 250 Fed. Rep. 873, 883, concluded that the Oklahoma income tax law offended in this regard, upon the ground (p. 888) that since the tax is as to citizens of Oklahoma a purely personal tax measured by their incomes, while as applied to a non-resident it is "essentially a tax upon his property and business within the State, to which the property and business of citizens and residents of the State are not subjected," there was a discrimination against the non-resident. We are unable to accept this reasoning. It errs in paying too much regard to theoretical distinctions and too little to the practical effect and operation of the respective taxes as levied; in failing to observe that in effect citizens and residents of the State are subjected at least to the same burden as non-residents, and perhaps to a greater, since the tax imposed upon the former includes all income derived from their property and business within the State and, in addition, any income they may derive from outside sources.

Appellant contends that there is a denial to non-citizens of the privileges and immunities to which they are entitled, and also a denial of the equal protection of the laws, in that the act permits residents to deduct from their gross income not only losses incurred within the State of Oklahoma but also those sustained outside of that State, while non-residents may deduct only those incurred within the

State. The difference, however, is only such as arises naturally from the extent of the jurisdiction of the State in the two classes of cases, and cannot be regarded as an unfriendly or unreasonable discrimination. As to residents it may, and does, exert its taxing power over their income from all sources, whether within or without the State, and it accords to them a corresponding privilege of deducting their losses, wherever these accrue. As to nonresidents, the jurisdiction extends only to their property owned within the State and their business, trade, or profession carried on therein, and the tax is only on such income as is derived from those sources. Hence there is no obligation to accord to them a deduction by reason of losses elsewhere incurred. It may be remarked, in passing, that there is no showing that appellant has sustained such losses, and so he is not entitled to raise this question.

It is urged that, regarding the tax as imposed upon the business conducted within the State, it amounts in the case of appellant's business to a burden upon interstate commerce, because the products of his oil operations are shipped out of the State. Assuming that it fairly appears that his method of business constitutes interstate commerce, it is sufficient to say that the tax is imposed not upon the gross receipts, as in *Crew Levick Co.* v. *Pennsylvania,* 245 U. S. 292, but only upon the net proceeds, and is plainly sustainable even if it includes net gains from interstate commerce. *U. S. Glue Co.* v. *Oak Creek,* 247 U. S. 321. Compare *Peck & Co.* v. *Lowe,* 247 U. S. 165.

Reference is made to the gross production tax law of 1915 (c. 107, Art. 2, Subdiv. A, § 1; Sess. Laws 1915, p. 151), as amended by c. 39 of Sess. Laws 1916 (p. 104), under which every person or corporation engaged in producing oil or natural gas within the State is required to pay a tax equal to 3 per centum of the gross value of such product in lieu of all taxes imposed by the State, counties, or municipalities upon the land or the leases, mining rights,

and privileges, and the machinery, appliances, and equipment, pertaining to such production. It is contended that payment of the gross production tax relieves the producer from the payment of the income tax. This is a question of state law, upon which no controlling decision by the Supreme Court of the State is cited. We overrule the contention, deeming it clear, as a matter of construction, that the gross production tax was intended as a substitute for the *ad valorem* property tax but not for the income tax, and that there is no such repugnance between it and the income tax as to produce a repeal by implication. Nor, even if the effect of this is akin to double taxation, can it be regarded as obnoxious to the Federal Constitution for that reason, since it is settled that nothing in that instrument or in the Fourteenth Amendment prevents the States from imposing double taxation, or any other form of unequal taxation, so long as the inequality is not based upon arbitrary distinctions. *St. Louis Southwestern Ry. Co.* v. *Arkansas*, 235 U. S. 350, 367–368.

The contention that there is a want of due process in the proceedings for enforcement of the tax, especially in the lien imposed by § 11 upon all of the delinquent's property, real and personal, reduces itself to this: that the State is without power to create a lien upon any property of a non-resident for income taxes except the very property from which the income proceeded; or, putting it in another way, that a lien for an income tax may not be imposed upon a non-resident's unproductive property, nor upon any particular productive property beyond the amount of the tax upon the income that has proceeded from it.

But the facts of the case do not raise this question. It clearly appears from the averments of the bill that the whole of plaintiff's property in the State of Oklahoma consists of oil-producing land, oil and gas mining leaseholds, and other property used in the production of oil and gas; and that, beginning at least as early as the year 1915,

when the act was passed, and continuing without interruption until the time of the commencement of the suit (April 16, 1919), he was engaged in the business of developing and operating these properties for the production of oil, his entire business in that and other States was managed as one business, and his entire net income in the State for the year 1916 was derived from that business. Laying aside the probability that from time to time there may have been changes arising from purchases, new leases, sales, and expirations (none of which, however, is set forth in the bill), it is evident that the lien will rest upon the same property interests which were the source of the income upon which the tax was imposed. The entire jurisdiction of the State over appellant's property and business and the income that he derived from them—the only jurisdiction that it has sought to assert—is a jurisdiction *in rem;* and we are clear that the State acted within its lawful power in treating his property interests and business as having both unity and continuity. Its purpose to impose income taxes was declared in its own constitution, and the precise nature of the tax and the measures to be taken for enforcing it were plainly set forth in the Act of 1915; and plaintiff having thereafter proceeded, with notice of this law, to manage the property and conduct the business out of which proceeded the income now taxed, the State did not exceed its power or authority in treating his property interests and his business as a single entity, and enforcing payment of the tax by the imposition of a lien, to be followed by execution or other appropriate process, upon all property employed in the business.

*No. 531. Appeal dismissed.*
*No. 580. Decree affirmed.*

MR. JUSTICE MCREYNOLDS dissents.