THE PEOPLE OF THE STATE OF NEW YORK ex rel. GEORGE A. STAFFORD, Relator, *v.* EUGENE M. TRAVIS, as Comptroller of the State of New York, Respondent.

· Third Department, February 28, 1921.

Taxation — income tax — non-resident carrying on business in New York — tax on income derived from export trade not tax on exports in violation of Federal Constitution — retroactive statute — effect of striking out provision from statute which made it unconstitutional — retroactive tax statute not invalid.

The relator, a resident of the State of Connecticut, maintained an office in New York city where he transacted all of his business of buying and selling goods for foreign trade on orders received from his representatives in foreign countries, but none of the goods were purchased in New York

nor stored there except to await cargo space, and were not handled otherwise by the relator, and, though billed to him, were marked for foreign shipment. Another class of relator's business was the filling of orders received by commission merchants in New York city from foreign trade, and in this class of business the relator delivered the goods, with the necessary papers, to the commission merchants, and received pay for the goods from them.

*Held,* that the relator was engaged in carrying on business within the State of New York within the meaning of section 351 of the Tax Law, as added by Laws of 1919, chapter 627.

The tax imposed on the relator's income from filling foreign orders for goods is not a tax on exports within the meaning of article 1, section 10, of the Federal Constitution.

Section 362 of the Tax Law, as added by Laws of 1919, chapter 627, having been held unconstitutional by the United States Supreme Court for the reason that it did not grant the same exemptions to non-residents as it did to residents, the subsequent act of the Legislature in granting equal exemptions to all taxpayers remedied the defect and left the act valid, and it was not necessary for the Legislature in 1920 to reimpose the tax for 1919.

However, if the present assessment is imposed under the 1920 re-enactment, it is nevertheless valid, since a tax law is not made invalid by the fact that it is retroactive in operation.

CERTIORARI issued out of the Supreme Court and attested on the 9th day of November, 1920, directed to Eugene M. Travis, as Comptroller of the State of New York, commanding him to certify and return to the office of the clerk of the county of Albany all and singular the proceedings had in adjusting an account for income taxes for the year 1919 against the relator under article 16 of the Tax Law of the State of New York, added by chapter 627 of the Laws of 1919, as amended, and under section 374 of said Tax Law.

*Louis H. Porter,* for the relator.

*Charles D. Newton,* Attorney-General [*James S. Y. Ivins* of counsel], for the respondent.

VAN KIRK, J.:

The taxpayer, George A. Stafford, is a citizen of Connecticut, living in Stamford in that State, where he votes. He has no home, permanent or temporary, in the State of New York. He is a cotton goods merchant; his office and place of business is in the city of New York. He has no business office in Connecticut. Traveling salesmen, living in Constantinople,

Buenos Ayres and many other foreign cities, take orders for goods, which orders are sent him by letter or cable to his New York office. He buys the goods in other States than New York and buys none in New York State. These goods are billed to him, marked, however, for foreign shipment. On receiving notice from the manufacturer that the goods are ready for shipment, he immediately engages cargo space; and, when the goods are delivered to him in New York, generally he immediately transfers those goods to the ship in which cargo space has been engaged. If cargo space has not been engaged, the goods are held sometimes a week or ten days for a ship, during which period the goods are stored in New York. Mr. Stafford, however, owns no storehouse in New York but hires a storehouse, or space in a storehouse, as occasion requires. The goods purchased by him are sometimes purchased to fill the order; at other times he purchases from a mill a large quantity of a kind of cotton goods and the orders he receives from abroad are filled from this general purchase. About one-half of his income is derived from this class of business.

There is another class of business. These foreign agents sometimes take orders, which they deliver to commission merchants in New York, other than Stafford. These orders, having been transferred to him by a commission merchant, he fills as in the former class of business. When the goods are delivered to him in New York, he in turn delivers them, with the accompanying papers, to the commission merchant, receives his pay for the goods and has nothing further to do with the transaction. Of this class of business Mr. Stafford sometimes has direct reports from his salesmen, sometimes not.

The business belongs to Mr. Stafford personally, but he is doing business under the name of " G. A. Stafford & Company." In the foreign cities Mr. Stafford says: " In some instances " the business is not " conducted in the name of G. A. Stafford & Company. * * * I think probably our name is on the door in most of them." But these foreign offices and agents do not sell exclusively for Mr. Stafford, some of the orders, as above stated, being sent to commission merchants. Sometimes the rent of foreign offices is paid directly by Mr. Stafford and sometimes it is a part of the compensation of the salesmen.

From the first class of business, which Mr. Stafford denomi-
nates as direct export business, the net income calculated for
1919 was $91,990.91; from the second class, $112,255.35;
and the total tax on both items, $5,442.03.

The taxpayer contends first that the business is not carried
on within the State of New York, so as to subject the income
derived therefrom to taxation by the State of New York; and
urges that the first class of business is entirely an export business.
The tax is imposed upon the income of a non-resident " from all
property owned and from every business, trade, profession or
occupation carried on in this State." (Tax Law, § 351, as added
by Laws of 1919, chap. 627.) The taxpayer has no other place
of business. He personally takes no part in any transaction,
except in New York. The orders for goods to be shipped
come to him at his New York office and are accepted there.
All of the orders which he sends for goods are sent from his
New York office. The goods are paid for in or from New
York and he is paid for goods sold in New York. He is not
a commission merchant, who earns his income by a charge
for business transacted for others, but he purchases goods
outright and they become his in New York and he sells them
outright from New York. The goods are not goods passing
through the State as a part of a movement in interstate or
foreign commerce. His income is made by the difference
between the price paid for the goods and the price at which
they are sold. He employs no capital abroad and has no
investments abroad. The business is solely his. All of his
activities, his banking and capital are in New York. If he
earns his income, he earns it in New York and nowhere else.
He has the protection of the laws and police power in New
York in his person, his property and his business; and he
derives benefit therefrom; else, why does he conduct his
business in New York? If he is not doing his business in
New York, where is he doing it? Certainly not where he
purchases his goods, for those who sell to him are protected
by the laws of the State in which they live, and it is their
protection, not his. His income is no part of the profits of
manufacture. He has nothing to do with manufacturing the
goods. He pays the full price for the goods after manufacture.
The income from manufacturing is taxable (but not against

him) in the State where the mill is, as in the Oklahoma oil business, discussed in *Shaffer* v. *Carter* (252 U. S. 55). He certainly would not claim that his business was in a foreign country, and he was under the protection of a foreign, sovereign State. He would not be subject to an income tax in a foreign country, in which his traveling men work. For the value of their work in foreign countries he pays, and his net income is calculated after those payments are deducted. The supposed case of an attorney, who goes to Kentucky and earns a fee, is not parallel. It would be a nearer parallel if the New York attorney, under a retainer, had done all of the legal work in New York and then sent his clerk, or another attorney, whom he pays for the service, to Kentucky to act for him in completing the particular business. The attorney's income from this would be earned in New York, less the fees and expenses of his employee. In the conclusion reached here there is nothing in conflict with holdings in *People ex rel. Alpha P. C. Co.* v. *Knapp* (230 N. Y. 48).

We conclude then that the taxpayer's business was carried on within the State of New York.

It was held in *Travis* v. *Yale & Towne Mfg. Co.* (252 U. S. 60) that the tax does not violate the due process of law provision of section 1 of the Fourteenth Amendment to the Federal Constitution.

With reference to the direct export business, so called, the taxpayer contends that it is a tax upon exports, and, therefore, in violation of the Federal Constitution, article 1, section 10, subdivision 2. It is hardly conceivable in what respect this tax could be called a tax upon exports. The tax is upon the net income and profits of the taxpayer's business and not upon the business itself, and certainly not upon the goods. If the taxpayer were a real estate dealer, the tax upon his income would not be a tax upon real estate. The source of his income is not the goods that he buys and sells, but the skill and ability that he exercises in conducting his business, in buying at a given price and selling the same goods at a higher price. (*Peck & Co.* v. *Lowe,* 247 U. S. 165; *United States Glue Co.* v. *Oak Creek,* Id. 321; *Shaffer* v. *Carter, supra,* 57.)

The State has jurisdiction over the source of this taxpayer's income. (*Shaffer* v. *Carter, supra,* 57.)

I can see no substantial difference between taxing the income of a man, who does all of his business in New York and resides outside, and of another man, who does all of his business in New York and happens to have a home in New York. While in New York the non-resident is subject to the jurisdiction of the State and its courts, wherever his residence may be; and jurisdiction can be acquired of his person at any time when he is within the limits of the State. The fact that his home is in Connecticut, and that, when in Connecticut, personal jurisdiction of him cannot be acquired, bears upon the means of enforcing the tax, rather than the right of assessing it. The State may have authority to levy a tax, though it does not have power to collect it by action for recovery of a personal judgment. (*City of New York* v. *McLean*, 170 N. Y. 374, 379.) In *Shaffer* v. *Carter* (*supra*) the court said: " In our system of government the States have general dominion, and, saving as restricted by particular provisions of the Federal Constitution, complete dominion over all persons, property and business transactions within their borders; they assume and perform the duty of preserving and protecting all such persons, property and business, and, in consequence, have the power normally pertaining to governments to resort to all reasonable forms of taxation in order to defray the governmental expenses." It seems to me of little avail to debate whether or not the income then is a personal tax or an excise tax. Whether one or the other is a question of definition. " The decision must depend not upon any mere question of form, construction or definition, but upon the practical operation and effect of the tax imposed." (*Shaffer* v. *Carter*, *supra*, 55.)

The next criticism is that, in this particular case, the tax is retroactive. The statute imposing the tax first was section 351 of the Tax Law (as added by Laws of 1919, chap. 627). In the act (§ 362, as added by Laws of 1919, chap. 627) exemptions were given to resident taxpayers which were not given to non-resident taxpayers. In 1920 (Laws of 1920, chap. 191) the Legislature struck out the word " resident " from the provision as to exemptions so that the same exemptions were allowed to non-residents as to residents. (See, also, Laws of 1920, chap. 58, repealing § 362, subd. 3.) This

answered every criticism that the United States Supreme Court had passed upon the act, and the enactment in the Laws of 1919 stood as valid. In *Yale & Towne Mfg. Co.* v. *Travis* (262 Fed. Rep. 576) it was held that, so far as chapter 627 of the Laws of 1919 attempts to assess non-residents and collect a tax, without according to them the privileges and immunities afforded by the act to citizens of New York, it is unconstitutional and void under article 4, section 2, of the Federal Constitution. The action was in equity to restrain the Comptroller from the threatened enforcement of penalties against the complainant, unless it complies with the terms of the Income Tax Law; and the relief asked for was granted. In the same case on appeal (*Travis* v. *Yale & Towne Mfg. Co.,* 252 U. S. 60) the court held that the act, in granting exemptions to residents and not to non-residents, discriminates against non-residents and the tax is not enforcible as it offends against said provision of the Federal Constitution. The exemptions referred to were $1,000 to single persons, $2,000 to married persons and heads of families, and $200 to each dependent. (Tax Law, § 362, as added by Laws of 1919, chap. 627.) In all respects other than this inequality the act is held valid. There is no difficulty in separating the good from the bad. " The principle of division is not a principle of form. It is a principle of function. The question is in every case whether the Legislature, if partial invalidity had been foreseen, would have wished the statute ·to be enforced with the invalid part exscinded, or rejected altogether." (*People ex rel. Alpha P. C. Co.* v. *Knapp,* 230 N. Y. 60.) The Legislature has answered this question by striking out of section 362 the word " resident " and thus giving the exemption to all taxpayers. This entirely remedied the defect and left the act valid. " Unless the conclusion be unavoidable, ' a general revenue statute should never be declared inoperative in all its parts because a particular part relating to a distinct subject may be invalid. A different rule might be disastrous to the financial operations of the government, and produce the utmost confusion in the business of the entire country.' " (*People ex rel. Alpha P. C. Co.* v. *Knapp, supra,* 62.) This word " resident," which

rendered the act unconstitutional, being exscinded, the statute in its valid form is preserved and operative. (Id. 64.) Were this an assessment under the act before amendment, the court would modify it by giving the relator the benefit of these exemptions in calculating the tax. (Id. 65.) The relator has had the benefit of these exemptions in making this assessment. The reimposition of the tax for the year 1919, in section 351-a of the Tax Law (as added by Laws of 1920, chap. 191), was unnecessary. Upon the amendment being made to section 362, the act as passed in 1919 became fully operative and the tax was lawfully assessed under that act.

In *Stockdale* v. *Insurance Companies* (20 Wall. 323) the court was considering an income tax under the act of July 14, 1870. Section 17 of that act (16 U. S. Stat. at Large, 261) provided that certain sections of the Internal Revenue Act of 1864 (13 id. 283, § 120 *et seq.*), relating to taxes upon dividends of banks, insurance companies, etc., as amended by subsequent statutes, "shall be construed to impose the taxes therein mentioned to the first day of August, eighteen hundred and seventy, but after that date no further taxes shall be levied or assessed under said sections; and all acts and parts of acts relating to the taxes herein repealed, and * * * all the provisions of said acts, shall continue in full force for levying and collecting all taxes properly assessed or liable to be assessed or accruing under the provisions of former acts," etc. The court said (on p. 331): " The right of Congress to have imposed this tax by a new statute, although the measure of it was governed by the income of the past year, cannot be doubted; much less can it be doubted that it could impose such a tax on the income of the current year, though part of that year had elapsed when the statute was passed. The joint resolution of July 4th, 1864,* imposed a tax of five per cent upon all income of the previous year, although one tax on it had already been paid, and no one doubted the validity of the tax or attempted to resist it."

In *Brushaber* v. *Union Pacific R. R.* (240 U. S. 1) the nature and quality of income taxes were fully discussed, and the case of *Pollock* v. *Farmers' Loan & Trust Co.* (157 U. S.

---

* See 13 U. S. Stat. at Large, 417, Res. No. 77.— [Rep.

429) analyzed and explained. In the former case the statute imposing income taxes in 1913 was under discussion. (See 38 U. S. Stat. at Large, 166, chap. 16, § 2.) The statute was enacted October 3, 1913, but fixed the first tax period beginning March 1, 1913, months before the act was passed, and ending December 31, 1913; and the court says that the validity of the tax, having this retroactive element, is not open to discussion since *Stockdale* v. *Insurance Companies* (*supra*). The State of New York has as broad powers for assessing income taxes within its own limits as has the Federal government. If then the assessment is made under the re-enactment of the statute in 1920, we are of the opinion that the assessment is valid.

The determination of the Comptroller should be affirmed.

Determination unanimously confirmed, with fifty dollars costs and disbursements.