ARMOUR & COMPANY, Plaintiff and Appellee, *v.* R. SANCHO BONET, TREASURER OF PUERTO RICO, Defendant and Appellant.

No. 7868. Argued December 21, 1939.—Decided October 24, 1940.

*George A. Malcolm, Attorney General (B. Fernández García, former Attorney General, and E. Córdova Díaz, former Deputy Attorney General, on the brief), and Jesús A. González, Assistant Attorney General, for appellant. Rafael Buscaglia for appellee.*

Mr. Justice Hutchison delivered the opinion of the court.

The Treasurer of Puerto Rico was the respondent in a suit for an injunction to restrain the collection of certain deficiency taxes alleged to have been illegally and arbitrarily assessed. He appeals from an adverse decree.

■ The Treasurer, proceeding upon the theory that the method of accounting employed by the taxpayer did not "clearly reflect the income" based his action on subdivision (b) of section 14 of Act No. 74, approved August 6, 1925 (Session Laws, p. 400). It reads as follows:

"(b) The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Treasurer does clearly reflect the income. If the taxpayer's annual accounting period is other than a fiscal year as defined in section 3 or if the taxpayer has no annual accounting period or does not keep books, the net income shall be computed on the basis of the calendar year."

Petitioner is a New Jersey corporation doing business in Puerto Rico with offices in Chicago and San Juan. Armour & Co., an Illinois corporation with its principal place of business in Chicago, is the parent corporation and owner of all the stock in the New Jersey corporation. There is a good deal of confusion and uncertainty not only in the testimony

of witnesses but also in an agreed statement of facts. The latter, for instance, contains the following statement:

According to the books of Armour & Co. in its San Juan branch "the principal concern in Chicago" sends merchandise to Puerto Rico, among other things hams, soap, sausages, lard, salt pork, etc., and bills the same at the market price in San Juan crediting to the San Juan branch and paying a percentage which varies from 1½ per cent to 10 per cent. The price at which the merchandise is billed "by Chicago to Puerto Rico" includes cost of insurance and freight until delivered at the dock in San Juan. These expenses are paid "by the principal concern in Chicago." The books "of Armour & Co." in Puerto Rico are correctly kept and reflect all business done in Puerto Rico. They do not show as to the various products sold in Puerto Rico, the original cost to "Armour & Co., Illinois" which conducts the packing business. The Puerto Rico branch sells at the price obtainable in Puerto Rico and the selling price can be determined from its books. The "amounts" claimed during any year by "Armour & Co." as the cost of merchandise sold in Puerto Rico "is" the price at which the "principal house" bills the same to "its branch in Puerto Rico", less the percentage which it allows. The Treasurer of Puerto Rico fixed the net taxable income at 2 per cent of the total sales in Puerto Rico and imposed the taxes referred to in the complaint and "Armour & Co." appealed to the Board of Equalization, which reduced the taxable net income to 1½ per cent of the total sales instead of the 2 per cent fixed by the Treasurer. Pending imposition of the tax by the Treasurer upon the basis of the decision by the Board of Equalization "Armour & Co." instituted the present proceeding and by order of the court, the imposition and collection of the tax, was enjoined.

Petitioner alleged that it was a packing house engaged in the production and sale of food products. Respondent admitted this. Hence, if the admitted averments of the complaint are to be taken as true, plaintiff and the parent corporation were engaged in the same business. The significance of this fact, if it be a fact, in its bearing upon the question of separate entities, is obvious.

Beyond the meager statement contained in the agreed statement of facts, *supra,* the evidence throws little or no light on the so called "contract" between plaintiff and the

parent corporation. The district judge found that "the principal house in Chicago sends merchandise to Puerto Rico, among other things hams, soap, sausages, lard, salt pork, etc., and bills such merchandise at the market price in San Juan, crediting and paying to the San Juan branch a percentage which varies from 1½ per cent to 10 per cent, according to the character of the merchandise." This finding, of course, follows the language of the agreed statement of facts and is equally vague and unsatisfactory. Like the agreed statement of facts, it leaves us in the dark as to whether the parent corporation was selling its merchandise to the New Jersey corporation or dealing directly with the San Juan branch of that corporation as its own agent and a branch of its own business.

The manager of the San Juan branch testified that there was always a profit, and a loss occurred only when the expenses of carrying on the business exceeded the commissions. "If there are any profits" he said "we send them to Chicago." Asked whether the principal house in Chicago treated its branch in Puerto Rico as a commission merchant, he answered: "As a branch." Asked whether "Armour & Co. in Chicago", the principal house, and "Armour & Co. in San Juan" were the same entity, he answered: "Yes, sir."

The evidence does not disclose whether or not the directors of the two corporations are the same. Assuming that the New Jersey corporation buys from the parent corporation of Illinois, the question arises whether the contract between the two corporations may be disregarded as being unfair to the subsidiary. This is largely a question of fact and, as we have shown, the record is incomplete. The Treasurer's theory was and is that by virtue of this contract, the subsidiary's books did not clearly reflect the subsidiary's net income derived from its business in Puerto Rico. His action in resorting to an alternative method for the computation of that income as authorized by subdivision (b) of section 14 of the Law, *supra,* was presumptively correct and the burden

was on plaintiff, we think, to show that the contract was fair and equitable and that its terms were such as might have been agreed upon by independent entities dealing with each other at arm's length. The question discussed at some length in the briefs as to whether the corporate entity of the subsidiary may be disregarded is a question that need not now be determined. The question is rather whether or not the Treasurer could disregard the contract between the two corporations which limited the profits to be derived by the subsidiary from its business in Puerto Rico. We have found no cases which dispose of this question under a statute identical with our own.

In *Buick Motor Co.* v. *Milwaukee*, 48 F. (2d) 801, the Circuit Court of Appeals for the Seventh Circuit—in dealing with a similar situation arising under a somewhat similar statutory provisions—said:

"But it is insisted that the intercorporate contract relation should be given effect, and that the stipulated $2,500 of net profit to appellant should be held to be the maximum of appellant's actual taxable income for each of the years in question. Whether the contract, as between the contracting parties, is upon its face fraudulent, does not concern the state in the matter of its taxes upon income derived from business transacted within its limits. Whatever other purpose such a contract might have, the conclusion seems quite irresistible that one of its objects was to transfer the income arising from the business of such states as then had, or might thereafter enact, an income tax law, so that the income would not be taxable in the state where earned. This motive might not alone warrant the state in ignoring the contract, but if appellant, notwithstanding the contract, continued to earn the income upon business transacted within the state, the contract would not serve to defeat the right of the state to tax the income so earned.

"The function of selling the product was a highly essential department of General Motors' business, scarcely less so than the manufacturing end of the operations, and was entitled to be credited with a substantial share of the profits of the general business. By turning over to General Motors the remittances for sales made by appellant's Wisconsin branch, the profits which appellant earned on

its Wisconsin business were diverted to appellant's one stock owner—General Motors. While appellant carried on this vast business under an arrangement with General Motors whereby the profits realized at once passed to General Motors, the profits constituted taxable income in Wisconsin ere they passed to the single beneficial owner of the capital stock. Distribution of corporate profits to or among stockholders, by whatever form, does not relieve the corporation from income tax on what is so earned and distributed. *Cliffs Chemical Co.* v. *Wis. Tax. Comm*, 193 Wis. 295, 214 N. W. 447, 449; *Shaffer* v. *Carter*, 252 U. S. 37, 40 S. Ct. 221, 64 L. Ed. 445; *Houston, etc., Co.* v. *United States* (C.C.A.) 250 F. 1; *Rensselaer & S. R. Co.* v. *Irwin* (C.C.A.) 249 F. 726; *West End St. Ry. Co.* v. *Malley* (C.C.A.) 246 F. 625; *Judson Freight Forwarding* v. *Commonwealth*, 242 Mass. 47, 136 N. E. 375, 27 A.L.R. 1131.''

See also *Palmolive Co.* v. *Conway*, 43 Fed. (2d) 226, affirmed in 56 F. (2d) 83 (cert. denied 287 U. S. 601); *Cliffs Chemical Co.* v. *Wisconsin Tax Commission*, 214 N.W. 447 (cert. denied 277 U.S. 574); *People ex rel Studebaker Corporation of America* v. *Gilchrist*, 155 N. E. 68 (N.Y. Court of Appeals 1926).

In the *Studebaker* case, the New York Court of Appeals in a lucid majority opinion by Judge Cardozo, held that the action taken by a tax commission was not authorized by the New York statute. Judge Crane filed an interesting dissenting opinion. The case is not authority for the view that the action taken by the Treasurer of Puerto Rico was not authorized by subdivision (*b*) of section 14 of our statute, *supra.*

We would not be understood as holding that the Treasurer was fully justified in disregarding the contract between the New Jersey corporation and its Illinois parent as being too generous to the latter or as transferring to the latter profits derived by the subsidiary from its business in Puerto Rico, and in finding that as a result of such contract, the subsidiary's books did not clearly reflect its net income. Nor need we now hold that the alternative method adopted by the Treasurer did clearly reflect the income, or that it was the

only alternative method available, or that it was so reasonable and just as to survive the test of an ordinary action to recover the tax after payment thereof under protest. It is enough to say that plaintiff has failed to show that the Treasurer's action was arbitrary or without any color of authority or that plaintiff has no adequate remedy in the ordinary course of procedure, or would suffer any great and irreparable injury unless granted relief by injunction. See *Los Diablos de la Plaza* v. *Sancho Bonet,* 54 P.R.R. 626; *Benitez Rexach* v. *Sancho Bonet,* 54 P.R.R. 712, and *Barceló Marques & Co., S. en C.* v. *Sancho Bonet,* 55 P.R.R. 277.

Appellee insists, however, that defendant had waived the jurisdictional question and that this came too late when presented at the close of plaintiff's evidence.

In 32 C. J. 365, section 612, cited by appellee in this connection, we read (italics ours):

"The question of adequacy of remedy at law must be raised by demurrer, *or at least be specially relied on in the answer,* and cannot be raised for the first time at the hearing."

In 4 Bancroft's Code Practice and Remedies 4488, section 3442, we find the following paragraph:

"*Waiver of defense.*—Where the defendant answers to the merits, and asks equitable relief, he cannot thereafter question the jurisdiction of the court to grant an injunction on the ground that the plaintiff has an adequate and complete remedy at law. But where the facts necessary to confer jurisdiction are stated in the complaint, and denied by the answer, the question becomes one of fact and is not waived by answering to the merits, and if the want of jurisdiction appears during the trial, the suit should be dismissed."

Defendant's answer by denial, affirmative averments, and elaborate special defenses, fully met these requirements.

The order granting an injunction *pendente lite,* and the final decree appealed from must be reversed, and the action will be dismissed.