Argued and submitted October 2, 1985, affirmed October 28, 1986

# WILSON et al,
*Appellants,*

*v.*

# DEPARTMENT OF REVENUE,
# STATE OF OREGON,
*Respondent.*

## (OTC 2106; SC S31577)

727 P2d 614

Sharon A. Rudnick, Eugene, argued the cause for appellants. With her on the briefs were Barry Rubenstein and Harrang, Swanson, Long & Watkinson, P.C., Eugene.

James C. Wallace, Assistant Attorney General, Salem, argued the cause for respondent. With him on the briefs were Dave Frohnmayer, Attorney General, and Elizabeth S. Stockdale, Assistant Attorney General, Salem.

LENT, J.

## LENT, J.

Plaintiffs (taxpayers) appeal from a judgment of the Oregon Tax Court affirming assessment of additional personal income taxes for the years 1975, 1976 and 1977 by the defendant Department of Revenue (Department).

The facts were stipulated. Taxpayers, Lem and Doris Wilson, residents of Oregon, operated a partnership. The partnership was located in Oregon and filed tax returns pursuant to ORS 316.467.[1] In 1973 a parcel of real property located in Oregon and owned by the partnership was acquired by the United States through condemnation. As a result, the partnership realized a gain for income tax purposes.

Taxpayers sought to defer recognition of the gain for federal and state income tax purposes by acquiring like-kind property pursuant to 26 USC § 1033.[2] This like-kind property consisted of a theater and a ranch in Oregon and a post office facility in Illinois. Department disallowed deferral of tax recognition of that portion of gain for that portion invested in the Illinois property pursuant to ORS 314.290(1), which provides:

"(1) For tax years beginning on and after January 1, 1957, where laws relating to taxes imposed upon or measured by net

---

[1] ORS 316.467 provides in part:

"(1) Every partnership having a resident partner or having any income derived from sources in this state, determined in accordance with the applicable rules as in the case of a nonresident individual, shall make a return for the taxable year setting forth all items of income, gain, loss and deduction, and the names and addresses of the individuals (whether residents or nonresidents) who would be entitled to share in the net income, if distributed, and the amount of the distributive share of each individual, and such other pertinent information as the department may prescribe by regulations and instructions. Such return shall be filed on or before the 15th day of the fourth month following the close of each taxable year. For purposes of this section, 'taxable year' means a year or period which would be a taxable year of the partnership if it were subject to tax under this chapter."

[2] 26 USC section 1033 provides in part:

"(a) General rule

"If property (as a result of its destruction in whole or in part, theft, seizure, or requisition or condemnation or threat or imminence thereof) is compulsorily or involuntarily converted -

"(1) Conversion into similar property

"Into property similar or related in service or use to the property so converted, no gain shall be recognized."

income make provision for deferral of tax recognition of gain upon the voluntary or involuntary conversion or exchange of tangible real or personal property, such provisions shall be limited to those conversions or exchanges where the property newly acquired by the taxpayer has a situs within the jurisdiction of the State of Oregon."

On appeal, taxpayers assert that ORS 314.290(1) is unconstitutional because it violates (1) Article I, section 20, of the Oregon Constitution, (2) Article I, section 32, of the Oregon Constitution, and (3) the Commerce Clause, Article I, section 8, clause 3, of the United States Constitution. We first consider the state constitutional challenges. *State v. Kennedy,* 295 Or 260, 666 P2d 1316 (1983).

## I. *OREGON CONSTITUTION: ARTICLE I, SECTION 20*

Taxpayers argue that ORS 314.290 violates Article I, section 20, of the Oregon Constitution, which provides:

"No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens."

This guarantee protects against the unjustified denial of equal privileges and immunities on two levels. First, the clause protects against discrimination in favor of "any citizen"; second, it protects against discrimination in favor of any "class of citizens." *See State v. Clark,* 291 Or 231, 630 P2d 810 (1981). The statute in this case is challenged on the latter basis: as an unconstitutional classification scheme.

Taxpayers argue that ORS 314.290 is unconstitutional because, among taxpayers who make a like-kind exchange of investment or business real property, it gives those who reinvest in Oregon the privilege of deferring the recognition of any gain while discriminating against those who reinvest outside of the state by demanding the immediate payment of taxes.

Contrary to taxpayers' argument, this court will not invalidate a law on the simple grounds that the law classifies individuals or groups of individuals. "[E]very law itself can be said to 'classify' what it covers from what it excludes." *State v. Clark, supra,* 291 Or at 240. Article I, section 20, prohibits those schemes that classify "persons or groups by virtue of

characteristics which they have apart from the law in question." 291 Or at 240. Laws which are left open for individuals voluntarily to bring themselves within a favored class do not violate Article I, section 20. ORS 314.290(1) does not classify based on characteristics which exist outside of the statute; taxpayers can voluntarily place themselves in a class subject to different tax treatment. The statute does not violate Article I, section 20, of the Oregon Constitution.

## II. *OREGON CONSTITUTION: ARTICLE I, SECTION 32*

Article I, section 32, of the Oregon Constitution provides:

"No tax or duty shall be imposed without the consent of the people or their representatives in the Legislative Assembly; and all taxation shall be uniform on the same class of subjects within the territorial limits of the authority levying the tax."

Taxpayers argue that ORS 314.290(1) is unconstitutional because it does not treat all persons uniformly within the class of taxpayers making a like-kind exchange of business or investment property.

■ Article I, section 32, specifically grants legislative authority to classify subjects for tax purposes. This court has consistently recognized that the taxing authority has broad discretion with respect to this classifying function. *See, e.g., Knight v. Dept. of Revenue,* 293 Or 267, 271, 646 P2d 1343 (1982); *Jarvill v. City of Eugene,* 289 Or 157, 178-79, 613 P2d 1 (1980); *Huckaba v. Johnson,* 281 Or 23, 25-26, 573 P2d 305 (1978); *Tharalson v. State Dept. of Rev.,* 281 Or 9, 16, 573 P2d 298 (1978); *Dutton Lbr. Corp. v. Tax Com.,* 228 Or 525, 539, 365 P2d 867 (1961). What Article I, section 32, requires is that the tax be uniformly applied within the particular class. *Dutton Lbr. Corp. v. Tax Com., supra,* 228 Or at 539-40.

■ ORS 314.290(1) serves to avoid the loss of taxes which are owed to the state. Without this provision there would be no assurance that persons who acquired out-of-state property in a like-kind exchange, and then left the state of Oregon, would voluntarily pay the taxes due to Oregon when it came time to recognize the gain. The statutory classification of gains of like-kind exchanges that keep accumulated gains within or move them out of the state is a reasonable step in

ensuring that gains accumulated within Oregon are taxed within Oregon. ORS 314.290(1) uniformly applies within each class of subjects. "It does not single out any fixed group or class of persons; anyone might change or move property in and out of Oregon * * *." *Tharalson v. State Dept. of Rev., supra,* 281 Or at 17. Any taxpayer transferring an investment from real property inside Oregon to property outside Oregon is immediately taxed; any taxpayer making such a transfer within Oregon can defer recognition of the taxable gain. The rule uniformly applies to all similarly situated Oregon residents.

## III.   *FEDERAL CONSTITUTION: COMMERCE CLAUSE*

Article I, section 8, clause 3, of the Constitution of the United States (the Commerce Clause) authorizes Congress "[t]o regulate Commerce * * * among the several States * * *."

Decisions involving attacks on state taxation laws for asserted offense of the Commerce Clause are both numerous and complicated.

"The power of the States to tax and the limitations upon that power imposed by the Commerce Clause have necessitated a long, continuous process of judicial adjustment. The need for such adjustment is inherent in a federal government like ours, where the same transaction has aspects that may concern the interests and involve the authority of both the central government and the constituent States.

"The history of this problem is spread over hundreds of volumes of our Reports. To attempt to harmonize all that has been said in the past would neither clarify what has gone before nor guide the future. Suffice it to say that especially in this field opinions must be read in the setting of the particular cases and as the product of preoccupation with their special facts." (Footnote omitted.)

*Freeman v. Hewit,* 329 US 249, 252, 67 S Ct 274, 91 L Ed 265 (1946). Some 13 years later, the Supreme Court of the United States referred to its decisions in this area as a "quagmire." As support for that characterization, the Court said:

"Commerce between the States having grown like Topsy, the Congress meanwhile not having undertaken to regulate taxation of it, and the States having understandably persisted in their efforts to get some return for the substantial benefits they have afforded it, there is little wonder that there has been

no end of cases testing out state tax levies. The resulting judicial application of constitutional principles to specific state statutes leaves much room for controversy and confusion and little in the way of precise guides to the States in the exercise of their indispensable power of taxation. This Court alone has handed down some three hundred full-dress opinions spread through slightly more than that number of our reports. As we said in *Miller Bros. Co. v. Maryland,* 347 U.S. 340, 344 (1954), the decisions have been 'not always clear * * * consistent or reconcilable. A few have been specifically overruled, while others no longer fully represent the present state of the law.' "

*Northwestern Cement Co. v. Minn.,* 358 US 450, 457-58, 79 S Ct 357, 3 L Ed 2d 421, 67 ALR 2d 1292 (1959).

Out of the several hundred cases decided by the Supreme Court of the United States, none that we can find is in point with the case before us. We believe that decision in this case rests on the answer to two questions. Do the constraints of the Commerce Clause on state law apply to the law and the facts before us? If so, and only if so, must the state law yield either because it has a discriminatory purpose or because it has a discriminatory effect that unduly burdens interstate commerce?[3] Put another way, the second question might be whether, if there is a discrimination or burden, there is justification for it.

### A.

This case involves the purchase of real property outside Oregon by an Oregon resident. Acquisition or disposition of interests in real property has historically and traditionally been regarded as a most local concern. Even if Congress could regulate sales of land as "commerce among the States" solely because the buyer's funds originate in another state, we doubt that this Congressional power would limit state power by mere implication. We think that the Commerce Clause is applicable in this case only if ORS 314.290(1) otherwise can be viewed as regulating interstate commerce.

The Commerce Clause was adopted

---

[3] *See Bacchus Imports, Ltd. v. Dias,* 468 US 263, 104 S Ct 3049, 82 L Ed 2d 200, 208 (1984): "A finding that state legislation constitutes 'economic protectionism' may be made on the basis of either discriminatory purpose * * * or discriminatory effect."

"to create and foster the development of a common market among the states, eradicating internal trade barriers, and prohibiting the economic Balkanization of the Union."

Nowak, Rotunda and Young, Constitutional Law 267 (2d ed 1983). *See Bacchus Imports, Ltd. v. Dias,* 468 US 263, 104 S Ct 3049, 3058, 82 L Ed 2d 200, 212 (1984): "[T]he Commerce Clause itself furthers strong federal interests in preventing economic Balkanization."[4] Is the passage of investment capital across state lines for purchase of land within the constitutional policy of free trade and competition?

The closest case in point seems to be *Boston Stock Exchange v. State Tax Comm'n,* 429 US 318, 97 S Ct 599, 50 L Ed 2d 514 (1977). The state of New York had amended its stock transfer tax statute to provide for a higher tax rate on in-state transfers of securities resulting from out-of-state sales than on those resulting from in-state sales. This was accomplished by reducing the tax rate on nonresident transfers involving in-state sales by 50% and by limiting the potential tax liability for all transactions involving in-state sales to $350. In all cases the delivery or transfer of the stock occurred within New York, but in some cases the money changed hands across state lines. In applying a Commerce Clause analysis, the court apparently held that the national system of free trade includes freedom of capital movement among the states.

■  The exchange of corporate shares for money and the exchange of land for money have a basic similarity. Both transactions involve a capital investment (in stock or realty). Because capital investment is basic to a system of free trade, and because the framers intended to create an area of free trade under the Commerce Clause, a state law keeping investment capital, even for land, within the state can have a restrictive impact on the capital markets and implicate the Commerce Clause. ORS 314.290(1) may affect a taxpayer's decision to make an out-of-state investment in real property because of the immediate obligation to pay taxes on the gain realized; therefore, the statute affects interstate commerce and the common market as a whole. The Commerce Clause is applicable in this case.

---

[4] *See also Wardair Canada v. Florida Dept. of Revenue,* 477 US ___, 106 S Ct 2369, 2373, 91 L Ed 2d 1, 9 (1986).

## B.

Having concluded that the matter is one to which the Commerce Clause is applicable, we reach the second question, i.e., whether ORS 314.290(1) has a discriminatory purpose or discriminatory effect.

An example of a state tax that was stricken, at least in part, for discriminatory purpose under the Commerce Clause appears in *Bacchus Imports, Ltd. v. Dias, supra,* where the Court found quite transparent the state's claim that its locally produced alcoholic liquor was not in competition with that imported from out of the state. The Court found that "[t]he legislature originally exempted the locally produced beverages in order to foster the local industries by encouraging increased consumption of their product." 82 L Ed 2d at 208.

■    In the present case, on the other hand, there is strong legislative history to show the purpose to be other than to keep investment capital in Oregon and thereby foster the business of those who would sell property to those seeking investment opportunities. ORS 314.290(1) was presented to and accepted by the legislature as a means of ensuring that taxable income should not escape Oregon control by converting Oregon investment property into out-of-state investment property.[5] This legislative history in Oregon is also to be contrasted with what the Supreme Court of the United States found to be the impetus for amendment of the New York transfer tax in *Boston Stock Exchange v. State Tax Comm'n, supra,* 429 US at 326-27.

We conclude that the purpose of the statute was not to keep money and business within the state, as taxpayers argue. The statute was enacted in recognition of the difficulties in collecting deferred taxes if the property owner leaves the state after having exchanged Oregon property for out-of-state property. In such a case the taxable event might well not be discovered. Even if discovery occurred, the Oregon tax collector would encounter the added burden of locating the taxpayer and enforcing liability. The state should not be required to monitor each taxpayer who might convert his or her investment from Oregon property to out-of-state property.

---

[5] Minutes, House Committee on Taxation (March 15, 1957, Testimony of Dean Ellis, Committee Counsel).

We are left with the question of whether the statute has a discriminatory effect that unduly burdens interstate commerce.

It should be kept in mind that ORS 314.290(1) does not tax one who invests in property outside Oregon while exempting one who invests in Oregon property. Each investor is liable for tax on the gain by reason of the exchange of the investor's Oregon property for compensation. The tax rate is the same. The only difference is that the investor who invests in out-of-state property is not entitled to defer payment of the tax until a later date.

The state taxation schemes which have been struck down by the Supreme Court of the United States are those where local interests have been insulated from the impact of the disputed tax. In *Boston Stock Exchange v. State Tax Comm'n, supra,* the tax was held unconstitutional because it imposed a greater tax liability on out-of-state sales than on in-state sales. 429 US at 332. Likewise, in *Maryland v. Louisiana,* 451 US 725, 101 S Ct 2114, 68 L Ed 2d 576 (1981), a tax credit was held unconstitutional because it resulted in local customers being protected from the incidence of a severance tax on the production of natural gas. 451 US at 758. In other cases where local residents have been exempted from the payment of taxes, the state taxation schemes have been invalidated. *See Bacchus Imports, Ltd. v. Dias, supra* (excise tax on liquor exempting local manufacturers); *Westinghouse Elec. Corp. v. Tully,* 466 US 388, 104 S Ct 1856, 80 L Ed 2d 388 (1984) (tax credit for specified corporations); *ARMCO v. Hardesty,* 467 US 638, 104 S Ct 2620, 81 L Ed 2d 540 (1984) (gross receipts tax exempting local manufacturers). The present case is distinguishable.

The statute in this case does not insulate local residents from taxation; every taxpayer selling property is responsible for the payment of taxes on any gain to the State of Oregon. ORS 314.290(1) only affects the time at which payment must be made. The statute does not affect the tax rate or tax liability of any taxpayer; it provides no credits or exemptions for local residents, and it does not permit some gain to escape taxation. The statute is applied regardless of whether the taxpayer resides within the state or outside of the

state boundaries. ORS 314.290(1) does not unconstitutionally discriminate against interstate commerce.

The judgment of the Oregon Tax Court is affirmed.