Argued and submitted December 3, 1987, decision of the Tax Court reversed and remanded to Department of Revenue for further proceedings February 2, 1988

## WOOD et al,
*Appellants,*

*v.*

## DEPARTMENT OF REVENUE,
*Respondent.*

(OTC 2365; SC S33889)

749 P2d 1169

Erskine B. Wood, Portland, argued the cause and filed the briefs for appellants.

Jerry Bronner, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief was Dave Frohnmayer, Attorney General, Salem.

JONES, J.

## JONES, J.

The issue in this case is whether the disallowance of a deduction for alimony[1] to nonresidents of Oregon, when contrasted with the allowance of a deduction for alimony to residents of Oregon under ORS 316.127(1)(a), violates the Privileges and Immunities Clause of the United States Constitution, Article IV, section 2. No Oregon constitutional issue has been raised. In this appeal, the plaintiffs do not challenge the Tax Court's decision that the Oregon tax statutes do not allow the deduction. The Tax Court ruled against plaintiffs on the constitutional question. *Wood v. Dept. of Rev.,* 10 OTR 374 (1987). We hold that ORS 316.127(1)(a) violates plaintiffs' claimed federal constitutional rights and, therefore, reverse and remand.

The parties have stipulated to the facts. Plaintiff Erskine B. Wood practiced law in Portland for many years (including the years in question: 1979, 1980 and 1981) as a partner in the firm of Wood, Tatum, Mosser, Brooke & Holden. Plaintiffs Erskine B. Wood and Ronnie Wood resided in Vancouver, Washington, and filed Oregon nonresident personal income tax returns on their Oregon income. During the years in question, plaintiff Erskine Wood made substantial alimony payments to two former wives, who paid Oregon income tax on the alimony received.[2]

Plaintiffs filed their complaint in the Tax Court, seeking to set aside the determination of the Oregon Department of Revenue, which denied plaintiffs' claim for refunds for the 1979, 1980 and 1981 tax years. The department determined that Oregon law does not allow nonresidents to deduct alimony payments in arriving at income taxable by Oregon.

The Tax Court affirmed the department's determination, concluding that alimony is not deductible because it is

---

[1] We use the term "alimony" because it corresponds with federal tax law. There is no "alimony" in Oregon law; its equivalent is "spousal support." *See* ORS 107.105.

[2] The parties stipulated that Erskine Wood, an attorney practicing in Oregon, derived income from (1) his law practice in Oregon, (2) rentals in Oregon and Washington, (3) dividends and interest, and (4) capital gains. During the years in question, Erskine Wood paid alimony totaling $80,113 to two former wives who resided in Oregon. The parties further stipulated that Erskine Wood's present and future Oregon law practice income was a major factor considered in determining the amount of alimony that was agreed upon in the divorce decrees.

not "attributable" to the nonresident's profession carried on under the Oregon taxing statutes. The Tax Court further determined that the denial of a deduction for alimony expense is not unconstitutional.

For the tax years at issue, ORS 316.127(1)(a)[3] did not permit a nonresident a deduction from Oregon income for alimony because the alimony was not a "deduction" in arriving at federal adjusted gross income. This was a temporary condition which has since been remedied by legislative action. The narrow question before this court is whether the distinction between the tax treatment of alimony payments of residents and nonresidents is an unconstitutional infringement on plaintiffs' rights under the federal Privileges and Immunities Clause.

From 1942 until the passage of the federal 1976 Tax Reform Act, all taxpayers were allowed to claim alimony as an itemized deduction on their federal tax returns. The 1942 Act provided that in computing net income there shall be allowed as deductions alimony or separate maintenance payments made during the taxable year. IRC § 23(u). Since the adoption of Oregon's Personal Income Tax Act of 1969, the express intent of the legislature has been that Oregon tax law will conform to federal tax law insofar as possible. ORS 316.007, 316.012. As part of the attempt to parallel federal tax law, Oregon residents and nonresidents are allowed to take itemized deductions from adjusted gross income on their Oregon tax returns similar to federal deductions.

---

[3] ORS 316.127 (1981) provided in relevant part:

"(1) The adjusted gross income of a nonresident derived from sources within this state is the sum of the following:

"(a) The net income of items of income, gain, loss and deduction entering into his federal adjusted gross income that are derived from or connected with sources in this state including (A) his distributive share of partnership income and deductions and (B) his share of estate or trust income and deductions; and

"* * * * *

"(2) Items of income, gain, loss and deduction derived from or connected with sources within this state are those items attributable to:

"(a) The ownership or disposition of any interest in real or tangible personal property in this state; and

"(b) A business, trade, profession or occupation carried on in this state."

The statute was amended in 1983 to be gender neutral. Or Laws 1983, ch 684, § 15a.

In 1976, Congress passed the Tax Reform Act and made alimony an adjustment, one of the items used to determine adjusted gross income, rather than an itemized deduction subtracted after adjusted gross income is calculated. This change allowed alimony-paying federal and Oregon resident taxpayers to take a full deduction for alimony without itemizing deductions and still take the benefit of the standard deduction.[4] Some nonresident Oregon taxpayers were harmed by this change because, while Oregon deductions are substantially the same as federal deductions, nonresidents who paid Oregon income tax for the years in question could not use the same adjustments to determine adjusted gross income. Oregon tax law allowed nonresidents to adjust their income derived from sources within this state only if the adjustments were attributable to the ownership or disposition of real or tangible personal property in Oregon or attributable to a business, trade, profession or occupation carried on in Oregon. ORS 316.127(2).

On appeal to this court, plaintiffs rest their claim solely on federal constitutional rights under the Privileges and Immunities Clause. Therefore, for the purposes of this case, we assume that plaintiff Erskine Wood's income as a partner in his Portland law firm had no relationship or attribution to his alimony payments.

The Privileges and Immunities Clause of the United States Constitution provides:

> "The citizens of each state shall be entitled to all Privileges and Immunities of citizens in the several states." US Const, Art IV, § 2.

Among the privileges and immunities accorded each citizen is exemption from "higher taxes or excises than are imposed by the State upon its own citizens." *Ward v. Maryland,* 79 US (12 Wall) 418, 430, 20 L Ed 449 (1871). Over 100 years ago the United States Supreme Court said:

> "[B]ut it should not be forgotten that the people of the several states live under one common Constitution, which was ordained to establish justice, and which, with the laws of

---

[4] Except for modifications not relevant to this case, the 1976 changes did not adversely affect Oregon residents because the "entire taxable income of a resident of this state is the federal taxable income of the resident." ORS 316.048.

Congress, * * * is the supreme law of the land; and that the supreme law requires equality of burden, and forbids discrimination in state taxation when the power is applied to the citizens of other states. Inequality of burden, * * * was one of the grievances of the citizens under the Confederation; and the new Constitution was adopted, among other things, to remedy those defects in the prior system." *Id.* at 431.

Further, the Court has held:

"Like many other constitutional provisions, the privileges and immunities clause is not an absolute. It does bar discrimination against citizens of other States where there is no *substantial reason* for the discrimination beyond the mere fact that they are citizens of other States. But it does not preclude disparity of treatment in the many situations where there are perfectly valid independent reasons for it. Thus the inquiry in each case must be concerned with whether such reasons do exist and whether the degree of discrimination bears a close relation to them. * * *" *Toomer v. Witsell,* 334 US 385, 396, 68 S Ct 1156, 92 L Ed 1460 (1948) (emphasis added).

In a more recent decision, the Court has restated this principle:

"The [Privileges and Immunities] Clause does not preclude discrimination against nonresidents where: (i) there is a substantial reason for the difference in treatment; and (ii) the discrimination practiced against nonresidents bears a substantial relationship to the State's objective." *Supreme Ct. of New Hampshire v. Piper,* 470 US 274, 284, 105 SD Ct 1272, 84 L Ed2d 205 (1985) (citing *Toomer v. Witsell, supra,* and *United Building & Construction Trades Council v. Mayor & Council of Camden,* 465 US 208, 222, 104 S Ct 1020, 79 L Ed2d 249 (1984)).

The issue before us is whether the denial to these nonresidents of a deduction for alimony payments is a disparity of treatment founded upon a "substantial reason * * * beyond the mere fact that they are citizens of other States."

The department argues that there are substantial reasons for the denial to nonresidents of a deduction for alimony. The department asserts:

"(a)  Nonresidents are only taxed on their Oregon source income, and alimony expenditures are not connected with Oregon source income.

"(b)  Residence has an obvious connection with the

allowance for the alimony deduction, because the alimony obligation arises from activities in the state of residence, which is the locus of the marriage; and

"(c) The statute denying deductions for alimony was originally intended to deny nonresidents those deductions for expenses associated with non-Oregon source income. Because of a change in the federal tax law, the Oregon statute denied to nonresidents the deduction for alimony, even though alimony is not associated with the generation of non-Oregon source income."

The so-called reasons simply do not track. It is no reason for disparity to claim that the income and alimony expenditures are not related to Oregon income, or to claim that the out-of-state character of the obligation and the plaintiff's residence justify such a distinction. Neither does the original intent of the Oregon legislation "to deny nonresidents those deductions for expenses associated with non-Oregon source income" provide any substantial reason for the unequal tax treatment, because, as the department admits, the present denial does not correspond to the original intent of the legislation.[5]

When considering nonresident taxpayer challenges under the Privileges and Immunities Clause, courts must look to the practical effect of the taxing scheme, applying a "rule of substantial equality of treatment for the citizens of the taxing state and nonresident taxpayers." *Austin v. New Hampshire,* 420 US 656, 664, 95 S Ct 1191, 43 L Ed 2d 530 (1975). The department agrees with plaintiffs and admits in its brief: "The practical effect of Oregon's taxing scheme is to allow a resident to deduct alimony when calculating his adjusted gross income, and to deny that deduction to a nonresident." The Department attempts to justify this disparity by arguing:

---

[5] In *Supreme Ct. of New Hampshire v. Piper,* 470 US 274, 284, 105 S Ct 1272, 84 L Ed 2d 205 (1985), the Court noted that "[i]n deciding whether the discrimination bears a close or substantial relationship to the State's objective, the Court has considered the availability of less restrictive means." Because the state concedes that the original intent of ORS 316.127 was to deny nonresidents deductions for expenses associated with non-Oregon source income, and not to deny nonresidents adjustments for alimony payments, we conclude that there are less restrictive means to achieve the original intent of the statute. The state could achieve its original intent and come closer to its stated policy of compatibility with the federal tax law by, for example, stating that federal adjustments will be allowed unless those adjustments are items of income, gain, loss or deduction derived from non-Oregon source income.

"Although a resident is taxable by Oregon on the resident's entire income from whatever source, a nonresident is taxable by Oregon on his Oregon source income only. Thus, the denial of the alimony deduction does not subject the nonresident to a higher tax than that imposed on a resident."

We are unpersuaded. No matter how the tax is calculated, the practical effect is still to discriminate against nonresident taxpayers for no articulable substantial reason. The disallowance of the deduction subjects the nonresidents to a higher tax relevant to alimony than imposed on residents.

We interpret the federal law as expressed in *Travis v. Yale & Towne Mfg. Co.,* 252 US 60, 40 S Ct 228, 64 L Ed 460 (1920), as dispositive of this case. In *Travis,* the State of New York imposed a personal income tax on residents and a like tax on nonresidents with respect to income earned or derived from business or property within the state. Residents were allowed a personal exemption of $1,000 for a single person, $2,000 for a married or head of household taxpayer. No similar exemption was granted to nonresident taxpayers.

The United States Supreme Court held this to be an unconstitutional discrimination against nonresidents, stating:

"In the concrete, the particular discrimination is upon citizens of Connecticut and New Jersey, neither of which states has an income tax law * * * residents and citizens of those states, go daily from their homes to the city and earn their livelihood there. They pursue their several occupations side by side with residents of the state of New York,—in effect competing with them as to wages, salaries, and other terms of employment. Whether they must pay a tax upon the first $1,000 or $2,000 of income, while their associates and competitors who reside in New York do not, makes a substantial difference. Under the circumstances as disclosed, we are unable to find adequate ground for the discrimination, and are constrained to hold that it is an unwarranted denial to the citizens of Connecticut and New Jersey of the privileges and immunities enjoyed by citizens of New York." *Id.* at 80.

The *Travis* decision was approved in *Austin v. New Hampshire, supra,* which cited *Travis* extensively, commenting:

"The New York tax on residents and non-residents' income at issue in *Travis* * * * could not be sustained when its

actual effect was considered. The tax there granted personal exemptions to each resident taxpayer * * * but it made no similar provision for non-residents." *Austin,* 420 US at 664-65.

In the present case, the actual effect of the department's interpretation is to grant a personal exemption (adjustment) for alimony to residents, but no similar provision for nonresidents. Because nonresidents cannot adjust their income to account for alimony payments, nonresidents pay tax on a relatively larger portion of gross income than do residents. We perceive no reasonable basis or substantial reason for this discrimination.

In arriving at this conclusion, we have considered the department's and the Tax Court's reliance on this court's decision in *Berry v. Tax Commission,* 241 Or 580, 397 P2d 780, 399 P2d 164 (1965), for the proposition that the federal constitution leaves broad discretion to state legislatures in determining what deductions or exemptions may be extended to nonresidents. In *Berry,* the plaintiffs, California residents, received income from a trust of real property in Oregon. The plaintiffs appealed a Tax Court ruling that denied them deductions for medical expenses, contending that the controlling statute, *former* ORS 316.360 (*repealed by* Or Laws 1969, ch 498, § 99), violated the Privileges and Immunities Clause. ORS 316.360 provided that nonresident taxpayers were allowed the deductions given to residents "only if and to the extent that they are connected with" income arising from sources within the state or property whose situs for taxation was within the state.

In *Berry,* a majority of the court upheld the statute, relying on *Shaffer v. Carter,* 252 US 37, 40 S Ct 221, 64 L Ed 445 (1920). In discussing the *Shaffer* case, this court said:

"In upholding the right of the State of Oklahoma to tax a nonresident upon income earned within Oklahoma while denying him the right to deduct losses which Oklahoma residents could have deducted, the United States Supreme Court said *in a dictum* that the state regulations did not violate any federal constitutional right. The *Shaffer* dictum was approved and reiterated in *Travis.* The *Shaffer* and *Travis* dicta do not appear to have been questioned or weakened by any holding of the Supreme Court and are treated in some of the law reviews

as law." *Berry,* 241 Or at 583 (emphasis added; citations omitted).

The *Berry* decision is founded on *dictum* from *Shaffer.*

In *Shaffer,* the United States Supreme Court upheld an Oklahoma tax on nonresidents' income derived from local property and business; Oklahoma residents paid a personal income tax. The Court upheld the tax on nonresidents because, as a practical matter, nonresidents were not subjected to a greater tax burden than residents.

The appellant in *Shaffer* also had challenged a provision that allowed residents to deduct losses incurred within and without the state, while nonresidents could deduct only losses incurred within the state. However, since the Court found no evidence that the appellant had incurred any losses outside the state, the Court declined to address that issue except to observe that the difference in deductions "is only such as arises * * * from the extent of the [state's] jurisdiction." 252 US at 57.

*Berry* involved personal deductions for medical expenses. Justices Denecke and O'Connell dissented from the *Berry* decision, pointing out that the most reasonable construction of the *Shaffer dictum* was that the United States Supreme Court had only approved a tax scheme limiting a nonresident's deductions for *business* losses, not *personal* deductions, to those incurred within the state.

"*Shaffer v. Carter,* [*supra*], held that Oklahoma could tax the income of a nonresident earned within Oklahoma. The opinion also stated that the state did not have to accord nonresidents a deduction 'by reason of losses elsewhere incurred.' (252 US at 57) Whether the court was referring to business-connected losses is unclear. The court remarked that there was no showing that the taxpayer had sustained any losses. The most reasonable interpretation of the language is that 'losses' referred to those incurred in business. This is concluded because the reasoning of the court was that as long as a nonresident could only be taxed upon income produced in the state, he could only deduct losses occurring in the state; a resident is taxed upon all income, wherever produced, therefore, he should be permitted to deduct all losses, wherever incurred." *Berry,* 241 Or at 585-86 (Denecke, J., dissenting).

The dissenters also noted that in *Travis,* the United States Supreme Court

"commented that a state could confine deductions for 'expenses, losses, etc., in the case of non-resident taxpayers, to such as are connected with income arising from sources within the taxing State\* \* \*.' (252 US at 75-76) Again, what 'expenses, losses, etc.' the court had in mind is unknown.

"\* \* \* I find it impossible to determine whether the opinions referred to business losses and expenses or personal expenses." *Id.* at 586.

*Berry* was decided in 1965, *before* the 1975 decision in *Austin v. New Hampshire, supra,* in which the Supreme Court warned that because nonresidents are not represented in the taxing state's legislature, the Court has a "heightened concern for the integrity of the Privileges and Immunities Clause." *Austin,* 420 US at 663. The *Austin* case mandates rigorous scrutiny of state taxing schemes that burden nonresidents.

The Supreme Court has said that states may legislate different treatment for residents and nonresidents when there is a strong reason of policy and a rational basis for the difference. *Allied Stores of Ohio, Inc. v. Bowers,* 358 US 522, 79 S Ct 437, 3 L Ed 2d 480 (1959). But here there is no substantial reason or rational basis for the difference. The alimony deduction is denied purely on the basis of nonresidence. As such, the taxing statutes eliminating the deduction are unconstitutional as applied to these plaintiffs.

The federal 1976 Tax Reform Act resulted in the denial of the alimony deduction to nonresidents. This "unfair" result was remedied by the 1987 Oregon legislature. Or Laws 1987, ch 647, § 12. The legislature succeeded in repairing this example of the "legal leakage from the fissures which have appeared over time in the tax structure where the Oregon Code is joined to the federal Tax Code." 10 OTR at 375. The repair, however, does not salvage the Oregon tax statutes attacked from sinking below the constitutional Plimsoll mark.

The decision of the Tax Court is reversed, and the case is remanded to the Department of Revenue for further proceedings consistent with this opinion.