# IN THE OREGON TAX COURT
## MAGISTRATE DIVISION

### L. McLane FISHER
and Sue R. Fisher,
*Plaintiffs,*

*v.*

### DEPARTMENT OF REVENUE,
*Defendant.*

(TC-MD 990332C)

Henry C. Breithaupt, Stoel Rives LLP, Portland, argued the cause for Plaintiffs.

James C. Wallace, Assistant Attorney General, Department of Justice, Salem, argued the cause for Defendant (the department).

Amended Decision for Plaintiff rendered February 13, 2001.

**DAN ROBINSON, Magistrate.**

Plaintiffs challenge the constitutionality of ORS 314.290 and ask the court to enter judgment determining that there is no personal income tax deficiency for 1995 stemming from a like-kind exchange of property under Internal Revenue Code (IRC) section 1031. Oral arguments were held January 20, 2000. Henry Breithaupt, Attorney at Law, represented Plaintiffs. James Wallace represented Defendant (the department).

## STATEMENT OF FACTS

The parties have stipulated to the facts. Plaintiffs exchanged Oregon investment real property for Colorado investment real property in 1995. As a like-kind exchange, Plaintiffs qualified for deferral of recognition of the gain realized for federal income tax purposes under IRC section 1031. The department issued a Notice of Deficiency to Plaintiffs on March 10, 1998, that Plaintiffs appealed, requesting deferral of gain recognition for purposes of their Oregon income taxes. Because Plaintiffs were residents of Colorado at the time of the exchange and they exchanged for property located outside Oregon, the department denied their request under the provisions of ORS 314.290.[1]

Plaintiffs allege that ORS 314.290 violates the Privileges and Immunities Clause,[2] the Commerce Clause,[3] and the Equal Protection Clause [4] of the United States Constitution, as well as Article I, section 32, and Article IX, section 1, of the Oregon Constitution. Plaintiffs ask the court to cancel their deficiency assessment.

## ANALYSIS

ORS 314.290 provides, in relevant part:

"(1)   Where laws relating to taxes imposed upon or measured by net income make provision for deferral of tax recognition of gain upon the voluntary or involuntary conversion or exchange of tangible real or personal property, the provisions shall be limited to those conversions or exchanges where or to the extent that:

"(a)   The property voluntarily or involuntarily converted or exchanged and the property newly acquired by the taxpayer both have a situs within the jurisdiction of the State of Oregon.

---

[1] Unless otherwise noted, all references to the Oregon Revised Statutes (ORS) are to 1995.

[2] US Const, Art IV, § 2.

[3] US Const, Art I, § 8.

[4] US Const, Amend XIV.

"(b)   The property voluntarily or involuntarily con-
verted or exchanged has a situs outside the jurisdiction of
the State of Oregon.

"(2)   Subsection (1) of this section shall not apply to:

"(a)   A principal residence or its contents.

"(b)   Upon election of a resident individual, estate or
trust made in the manner provided by rule adopted by the
Department of Revenue, to any property (without regard to
situs) except as follows:

"(A)   If the newly acquired property is outside the juris-
diction of the State of Oregon, the gain shall be taken into
account or the deferral or nonrecognition of gain shall cease
upon a change of the taxpayer to nonresident status; or

"(B)   If, for federal income tax purposes, the gain is
later required to be taken into account, or the deferral or
nonrecognition ceases for any reason, the gain shall be
taken into account or the deferral or nonrecognition shall
cease for Oregon personal income tax purposes as well."

For purposes of Oregon income tax, the statute pre-
cludes nonresidents from deferring gain recognition on a like-
kind exchange where the newly acquired property is located
outside of Oregon.[5]

■       It is customary to first consider the state constitu-
tional claims before reviewing the federal constitutional
issues. *See, e.g., Poddar v. Dept. of Rev.*, 328 Or 552, 562, 983
P2d 527 (1999). Thus the court begins by addressing Plain-
tiffs' uniformity challenges under the Oregon Constitution.

*Uniformity*

■       Plaintiffs allege that ORS 314.290 violates Article I,
section 32,[6] and Article IX, section 1,[7] of the Oregon Consti-
tution, Oregon's uniformity clauses. The court disagrees.

---

[5] Oregon residents who exchange for property located outside of Oregon may
elect to defer recognition but must recognize the gain in the tax year in which they
change to nonresident status, if their residency changes. *See* ORS 314.290(2)(b); *see
also* OAR 150-314.290(1)(d) (instructing that the resident must attach to that
year's tax returns a statement of information relating to the exchange and agree to
report the gain in the year taxpayer becomes a nonresident).

[6] "No tax or duty shall be imposed without the consent of the people or their
representatives in the Legislative Assembly; and all taxation shall be uniform
on the same class of subjects within the territorial limits of the authority lev-
ying the tax."

[7] "The Legislative Assembly shall, and the people through the initiative may,
provide by law uniform rules of assessment and taxation. All taxes shall be

Uniformity is violated by improper legislative classifications and the threshold for constitutionality is quite low. "The differences justifying the attempted classification must bear [only a] reasonable relationship to the legislative purpose." *Huckaba v. Johnson*, 281 Or 23, 26, 573 P2d 305 (1978).[8] Moreover, "the legislature has wide discretion in classifying subjects of taxation." *Knight v. Dept. of Rev.*, 293 Or 267, 271, 646 P2d 1343 (1982); *see also Wilson v. Dept. of Rev.*, 302 Or 128, 132, 727 P2d 614 (1986); *Standard Lbr. Co. v. Pierce et al.*, 112 Or 314, 228 P 812 (1924). Finally, the court in *Huckaba*, in part, stated:

> "What is required in assessing a constitutional challenge to classification for tax benefit is a review of the grounds for the classification to determine if it rests upon a rational basis. The legislature may make distinctions of degree having a rational basis, and when subjected to judicial scrutiny they must be presumed to rest on that basis if there is any conceivable state of facts which would support it."

*Huckaba*, 281 Or at 26 (citing *Carmichael v. Southern Coal Co.*, 301 US 495, 57 S Ct 868, 81 L Ed 1245 (1937) and *Smith et al v. Columbia County et al*, 216 Or 662, 341 P2d 540 (1959)).

The state's justification in the instant case for the disparate treatment under ORS 314.290 is that it is more difficult to collect taxes from nonresidents and that those difficulties result in a loss of revenue. Although Plaintiffs take exception to the state's claim, the court finds that the classification bears the reasonable relationship to the purpose of avoiding a loss of revenue, particularly in light of the legislature's wide discretion to classify for tax purposes.

*Privileges and Immunities Challenge*

Plaintiffs next allege that, under ORS 314.290, the disallowance of gain deferral to nonresidents of Oregon,

---

levied and collected under general laws operating uniformly throughout the state."

[8] Although the language quoted by this court from the *Huckaba* case comes from the United States Supreme Court's equal protection analysis, Plaintiffs' counsel correctly points out that the Oregon Supreme Court has equated Oregon's uniformity requirement with federal equal protection.

when contrasted with the allowance of gain deferral to residents of Oregon, violates the Privileges and Immunities Clause of the United States Constitution, Article IV, section 2, which provides: "The citizens of each state shall be entitled to all privileges and immunities of citizens in the several states."

The purpose of the Privileges and Immunities Clause is to "place the citizens of each State upon the same footing with the citizens of other States, so far as the advantages resulting from citizenship in those States are concerned." *Paul v. Virginia*, 75 US (8 Wall) 168, 180, 19 L Ed 357 (1869) (noting that the clause does not exempt nonresidents of the liabilities that attend the privileges of the states), *overruled in part on other grounds by U.S. v. South-Eastern Underwriters Ass'n*, 322 US 533, 64 S Ct 1162, 88 L Ed 1440 (1944). Among those privileges and immunities is that the state may not impose a tax scheme, the practical effect of which is that nonresidents pay higher taxes than the state's residents. *See Ward v. Maryland*, 79 US (12 Wall) 418, 430, 20 L Ed 449 (1871) (recently cited by *Lunding v. New York Tax App. Trib.*, 522 US 287, 296, 118 S Ct 766, 139 L Ed 2d 717 (1998)).

The Privileges and Immunities Clause bars "discrimination against citizens of other States where there is no substantial reason for the discrimination beyond the mere fact that they are citizens of other States;" however, it is not an absolute. *Toomer v. Witsell*, 334 US 385, 396, 68 S Ct 1156, 92 L Ed 1460 (1948). "The Clause does not preclude discrimination against nonresidents where: (i) there is a substantial reason for the difference in treatment; and (ii) the discrimination practiced against nonresidents bears a substantial relationship to the State's objective." *Supreme Ct. of New Hampshire v. Piper*, 470 US 274, 284, 105 S Ct 1272, 84 L Ed 2d 205 (1985) (citing *Toomer*, 334 US at 396).

In *Toomer*, the Court concluded that South Carolina's nonresident shrimping license fees, roughly 100 times that of resident shrimping license fees, were unconstitutional. 334 US at 402. The Court found that the record did not support South Carolina's stated reasons, which were to conserve its shrimp supply, head off excessive trawling, reduce damage caused by certain fishing methods, and cover

the costs of enforcing the laws against nonresidents. *Id.* at 397-98. Similarly in *Piper,* the Court noted that New Hampshire's offered justifications for denying nonresidents admission to the state bar were without merit, concluding that the state failed to present evidence supporting a substantial reason for its discrimination against nonresident bar applicants. 470 US at 285-87.

The Court most recently applied this test in *Lunding.* 522 US 287 (involving a New York statute that denied an alimony deduction to nonresidents). Although recognizing that "absolute equality is impracticable in taxation," the Court maintained that there must be reasonable ground for subjecting nonresidents to different treatment. *Id.* at 297 (quoting *Maxwell v. Bugbee,* 250 US 525, 543, 40 S Ct 2, 63 L Ed 1124 (1919)). Following its earlier reasoning in *Piper* and *Toomer,* the Court confirmed that "the State must defend * * * [its different treatment of nonresidents] with a substantial justification * * *, including an explanation of how the discrimination relates to the State's justification." *Id.* at 298. The *Lunding* Court also emphasized that a more rigorous standard is used when analyzing claims under the Privileges and Immunities Clause of the Untied States Constitution due to the fact that nonresidents are not represented in the state's legislature. *Id.* (citing *Austin v. New Hampshire,* 420 US 656, 664, 95 S Ct 1191, 43 L Ed 2d 530 (1975)).

The Oregon Supreme Court has also recognized the necessity of rigorous scrutiny in federal privileges and immunities cases. *See Wood v. Dept. of Rev.,* 305 Or 23, 33, 749 P2d 1169 (1988). The *Wood* court found that the practical effect of disallowing nonresidents a deduction for alimony payments was that nonresidents rendered tax on a larger portion of their income than residents, for which the court found no articulable reason sufficient to justify such discrimination. *Id.* at 30-31. That heightened scrutiny was reiterated by the Oregon Tax Court in *Roelli v. Dept. of Rev.,* 14 OTR 201 (1997), which found that between two alternatives for providing gambling loss deductions to nonresidents, the legislature's chosen proportionate treatment presented a substantial reason for limiting nonresidents' loss deductions. *Id.* at 205-06 (noting consideration of the state's limited jurisdiction to tax).

■    In *Lunding, Piper, and Toomer*, the Court did not question the worthiness of the states' advanced objectives but found that the reasons did not provide a substantial justification for discriminating between residents and nonresidents. *See Lunding*, 522 US at 302-06; *Piper*, 470 US at 285-87; *Toomer*, 334 US at 398. Moreover, the Court found that even assuming the states' reasons were substantial, the reasons did not bear a substantial relationship to the states' objectives. *See Lunding*, 522 US at 314; *Piper*, 470 US at 287; *Toomer*, 334 US at 398. In so doing, the Court considered whether the states' means for obtaining their objectives were the least restrictive. *See Piper*, 470 US at 284-85; *Toomer*, 334 US at 398-99. The upshot of those cases is that there must be substantial equality in treatment between residents and nonresidents and where a disparity exists there must be a substantial reason for the difference in treatment beyond the mere fact of nonresidency and the degree of discrimination must bear a close relationship to the concern the statute is intended to address. *See Piper*, 470 US at 284; *Lunding*, 522 US at 297-98.

■    The department first argues that the statute "does not discriminate with regard to taxation, exemption or tax rate" because the difference in treatment is merely one of timing and for that reason is qualitatively different from cases finding unconstitutional discrimination. Under ORS 314.290, everyone pays a tax on the gain; nonresidents simply pay at a different time than residents. While that is an accurate reading of the statute, timing is of considerable importance to many taxpayers, which explains the frequency and intensity with which taxpayers litigate accrual versus cash method accounting for tax purposes and like-kind exchange gain deferrals. Timing is a matter of great importance to at least some taxpayers because, somewhat predictably, income varies from year-to-year and tax rates change.

As Plaintiffs point out, the practical effect of the different timing is that residents who reinvest in property outside of Oregon receive two benefits that are denied to nonresidents who reinvest in property outside of Oregon: (1) the time-value of money (by deferring the gain); and (2) the possibility of altogether avoiding the tax on gain when the taxpayer who deferred the gain dies prior to a triggering event,

resulting in a stepped-up basis for that taxpayer's beneficiaries. Those benefits result in nonresidents paying a higher tax than residents, at least in the year of the exchange.

Next, the department argues that if the statute is found to have a discriminatory element, it is not unconstitutional because its purpose is to "aid in the collection of taxes" due to the level of difficulty associated with collecting from nonresidents. The department reasons that assessment of residents is easier due to the greater contacts they have with the state versus nonresidents.

There is no evidence substantiating the department's claim of collection difficulties. Plaintiffs respond that assumptions and speculation are insufficient and that the absence of demonstrable proof works against the state. The court is left with that impression as well. Furthermore, Plaintiffs argue that a current resident exchanging for property outside Oregon who later moves from the state presents the same potential problem the department states it is concerned with in this case. Plaintiffs point out that there is no reason to believe that those residents are any more likely to report and pay the tax. That argument is persuasive and leaves the court weighing equally compelling positions. For that reason, the "substantial justification" required by *Lunding* is lacking. Presumably, that is the function of requiring residents acquiring out-of-state property to file a statement with the department along with a promise to pay the tax due if they move from Oregon. Although not required, a consideration of whether less restrictive means exist aids the court's inquiry. *See Piper*, 470 US at 284; *Toomer*, 334 US at 398-99.

Plaintiffs have posed reasonable alternatives for attaining the state's objectives. For example, Oregon might allow residents and nonresidents who acquire property located outside Oregon to elect the deferral on the condition that an information return be filed each year, along with a copy of taxpayer's federal returns, with the deferral ceasing should taxpayer fail to file. Nothing in the evidence shows that in these modern times, the state's purported difficulties in tracking and collecting from nonresidents are so great that the state must wholesale deny gain deferral to nonresidents

who exchange for property outside Oregon while residents who exchange for property outside Oregon are allowed to elect the deferral and file what amounts to an information return.

The department further contends that, in order to collect from nonresident taxpayers who refuse to pay an assessment, it would have to expend state funds to file a judgment in another state and contract with out-of-state collection agencies to pursue the revenue, all at an increased cost to the state. Again, those claims are unsupported and Plaintiffs note that "the state has the same ability to obtain a judgment against a nonresident as against a resident [and that judgment] must be respected throughout the country under the Full Faith and Credit Clause of the United States Constitution."[9]

It is hard to reconcile the department's contentions of collection difficulties with the practical realities of this modern, highly mobile society in which we live. Many non-residents are liable for taxes to Oregon (for example, Washington residents working in Oregon) and presumably some of them do not voluntarily pay, leaving the state in the position of having to pursue them in other states. Just as in *Lunding, Piper,* and *Toomer,* the court finds that the evidence in this case is insufficient. The department has failed to support its justification and thus failed to show substantial reason for the difference in treatment.

The department relies on *Wilson* to support its contention of collection difficulties, arguing that this issue has already been decided in its favor. *See Wilson v. Dept. of Rev.,* 302 Or 128, 727 P2d 614 (1986). *Wilson* explored a challenge to the statute here at issue, but as it existed prior to the 1991 amendments. *See id.* The previous version of ORS 314.290 (1989) disallowed gain deferral to both residents and nonresidents who exchanged for property located outside of Oregon, thus placing the emphasis on the location of the newly acquired property rather than the residency status of the investor. Wilson, an Oregon resident, challenged the state's

---

[9] US Const, Art IV, § 1.

different treatment between residents who reinvest in property in Oregon and residents who reinvest in property outside the state. *Id.* at 128. While the court did acknowledge the difficulty of collecting taxes from nonresidents, the case was decided under the state's Privileges and Immunities Clause, which does not apply to nonresidents. *See* Or Const, Art I, § 20; *see also Wilson*, 302 Or 128.

A state privileges and immunities challenge does not necessitate the heightened scrutiny of its federal counterpart because the element of concern expressed in *Austin*, that those affected by the legislation are not represented in the state legislature, is not present. *See Austin*, 420 US at 664. For that reason, the outcome of *Wilson* is not controlling in this case. Although the court in *Wilson* appeared to accept that a level of difficulty accompanies tracking gain from property exchanged outside of Oregon, it is unclear whether the statement was based on an evidentiary showing, an unsupported allegation by the department, or was gratuitously inserted by the court. With the more rigorous scrutiny required by the United States Supreme Court under federal privileges and immunities cases, the *Wilson* court's statement is insufficient. Moreover, the tax treatment under ORS 314.290 has changed since *Wilson*. In 1991, the statute was amended to preclude only nonresidents who exchange for property outside of Oregon from receiving the gain deferral. Residents who exchange for property located outside Oregon can opt to defer their gain unless and until they become nonresidents. *See* ORS 314.290(2)(b)(A) (requiring that a statement of information be filed). Although the Oregon Legislature may be given credit for attempting to make more widely available the benefit of gain deferral, it created a discrepancy in treatment solely based on residency.[10]

The law is clear that the state must defend the disparate treatment with substantial justification and in this case the court finds it has failed to do so. *See Lunding*, 522 US

---

[10] The policies for providing a deferral in like-kind exchanges stem from a recognition that the taxpayer's investment is simply being continued and that the transaction is not generating liquid cash with which tax may be paid. *See* James Charles Smith & Walter Hellerstein, *State Taxation of Federally Deferred Income*, 44 Tax L Rev 349 (1989).

at 297. Even if the court were to accept the department's contentions, the department has not shown that in denying the deferral to all nonresidents exchanging for property outside Oregon, its response to those concerns bears a substantial relationship to relieving the state from the difficulties of collecting taxes from nonresidents.

The department also places reliance on *Berry v. Tax Commission*, 241 Or 580, 397 P2d 780, 399 P2d 164 (1965). The *Wood* court noted that *Berry* was decided prior to United States Supreme Court's mandate in *Austin*, affirming the application of a rigorous standard in federal privileges and immunities cases. *See Wood*, 305 Or at 33 (citing *Austin*, 420 US at 663). In addition, the court noted that *Berry* was founded on *dictum* from *Shaffer v. Carter*, 252 US 37, 40 S Ct 221, 64 L Ed 445 (1920). *See Wood*, 305 Or at 32. The court rejects the department's arguments relating to *Berry*.

Because the Privileges and Immunities Clause of the United States Constitution disposes of this case, it is not necessary to address Plaintiffs' remaining federal constitutional challenges. The court now turns to the appropriate remedy.

*Severability and Oregon's Remedy*

■        The department is incorrect in its argument that Plaintiffs' claim is nonjusticiable because severance results in disallowing deferral to residents who exchange for property outside Oregon rather than in canceling the tax Plaintiffs owe on the gain realized in their exchange. The remedy in a Privileges and Immunities Clause violation is to remove the discrepancy in treatment between residents and nonresidents. In order to achieve that purpose, the court may sever from the statute that part that is unconstitutional in a way that most effectively serves the intent of the legislature. ORS 174.040; *City University v. Oregon Office of Educ. Policy*, 320 Or 422, 425-27 (1994).

Prior to 1991, gain deferral was offered only to those who exchanged for Oregon property. The 1991 amendment to ORS 314.290 expanded deferral to residents who reinvest outside Oregon. *See* ORS 314.290(2)(b). Such an expansion necessarily excludes nonresidents who reinvest outside Oregon from the benefit of deferral. The result, as discussed

above, is a violation of the Privileges and Immunities Clause of the United States Constitution.

Severance is governed by ORS 174.040, which provides:

> "It shall be considered that it is the legislative intent, in the enactment of any statute, that if any part of the statute is held unconstitutional, the remaining parts shall remain in force unless:
>
> "(1)   The statute provides otherwise;
>
> "(2)   The remaining parts are so essentially and inseparably connected with and dependent upon the unconstitutional part that it is apparent that the remaining parts would not have been enacted without the unconstitutional part; or
>
> "(3)   The remaining parts, standing alone, are incomplete and incapable of being executed in accordance with the legislative intent."

As can be seen, ORS 174.040 expresses a legislative preference for severance, with the remaining provisions to continue in force, except as limited by subsections (1) through (3). The statute addressed by this decision, ORS 314.290, does not specifically express an intent contrary to severance, as set forth in subsection (1) of ORS 174.040. Moreover, the remaining parts of the statute are not so essential and inseparable from the unconstitutional provision that severing subsection (2)(b) from the statute leaves a law that obviously would not have been enacted without that subsection. That is apparent from the fact that the statute, as severed, has an effect identical to the statute prior to amendment in 1991. Finally, the remaining parts of the statute are not "incomplete and incapable of being executed in accordance with the legislative intent," thereby demanding something other than severance of the offensive provision only. *See* ORS 174.040(3).

Severance of ORS 314.290(2)(b) will eliminate deferral for residents who exchange for property outside Oregon, essentially taking the statute back to its pre-1991 status in that regard. While the legislature in 1991 intended to expand the availability of like-kind exchange gain deferral, the court

does not have the power to add provisions to the statute enabling nonresidents who reinvest outside Oregon to elect deferral and file information returns. If it so chooses, the legislature may amend the statute in order to further expand availability of gain recognition deferral, according to the constitutional principles discussed above. The court thus declares ORS 314.290(2)(b) severed from the Oregon Revised Statutes because it unconstitutionally creates disparate treatment between residents and nonresidents of Oregon. Severance is prospective from the date of issuance of this Decision.

■ Prospective relief in the form of severance, however, does not go far enough under governing decisions of the United States Supreme Court. Taxpayers are entitled to a "clear and certain" remedy for the preferential treatment that has occurred. *See McKesson v. Division of Alc. Bev.*, 496 US 18, 39, 43, 51, 110 S Ct 2238, 110 L Ed 2d 17 (1990) (citations omitted). The relief must "cure the mischief * * * done under the earlier construction." *Id.* at 34-35 (quoting *Montana National Bank of Billings v. Yellowstone County*, 276 US 499, 504, 48 S Ct 331, 72 L Ed 673 (1928)). Equality of treatment must begin with the 1995 tax year, which is the year of the department's assessment against Plaintiffs and thus the year the cause of action arose. That is so because Plaintiffs are entitled to a meaningful opportunity to contest the tax. *See id.* at 39. Because the dispute involves a one-time request for deferral of the recognition of the gain resulting from a taxable sale of property in 1995, the corrective measures must go back to that year.

The state has some discretion in determining how to satisfy its remedy obligation. *See id.* at 35, 51. The state may accomplish true equality for the contested tax period *either* by allowing nonresidents who exchanged for property outside Oregon and have not met a triggering event to file amended returns and elect deferral *or* by collecting tax on the previously deferred gain elected by residents who exchanged for property outside Oregon. *See id.* Such a choice provides an adequate remedy satisfying the requirements of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See id.* at 36, 38, 51.

Until the state is able to show compliance with the mandate of *McKesson*, the department is enjoined from pursuing collection of the deficiency against Plaintiffs. *See id.* at 35, 40 n 23.

## CONCLUSION

IT IS THE DECISION OF THE COURT that Defendant's Motion for Summary Judgment be denied.

IT IS FURTHER DECIDED that Plaintiffs' Motion for Summary Judgment is granted and that subsection (2)(b) is severed from ORS 314.290. The case is remanded to the department for further remedial proceedings not inconsistent with this decision.

Costs, disbursements, and attorney fees awarded to neither party.